## HECKERT and another, administrators of Heckert, against HAINE.

*Lancaster,*
*Saturday,*
*May 29.*

IN ERROR.

If the question be whether a receipt to which there is a subscribing witness, was given, the witness must be called: but the fact of the payment of the money, may be proved by any witness.

One of the defendants, an administrator, having released all his interest in the intestate's estate, and having offered to pay into Court all the costs of the suit in case he should be admitted was offered as a witness. *Quære,* whether the *offer* to pay is sufficient, and whether there must not be an actual payment both of all costs accrued at the time of payment, and of all that may afterwards accrue.

If there be an issue upon the plea of *plene administravit,* an administrator cannot be made a witness by releasing his interest, and paying costs; because *non constat* that that issue may not be found against him, and he eventually made personally responsible for the debt.

THIS was a writ of error to the Common Pleas of *Dauphin* county, where three bills of exceptions were tendered by the counsel of the plaintiffs in error, who were defendants below, to the opinion of the Court, in admitting and overruling testimony. The whole case appears in the opinion of the Chief Justice.

*Elder* and *Hopkins* for the plaintiffs in error.

*Montgomery* and *Duncan,* contra.

TILGHMAN C. J. This action was brought by *George Haine* the plaintiff below against *John Heckert* the original defendant below, who had been his guardian, for money received by the defendant for the use of the plaintiff during his minority. The action was commenced in 1787, *Heckert* died in 1799, and on his death his administrators became parties to the suit. Three bills of exceptions were taken in the course of the trial.

The plaintiff offered to prove by the oath of *John Haine,* that the said *Haine* had paid to *J. Heckert* as guardian of the plaintiff the sum of 150*l.* specie in the year 1773, in discharge of a bond in which the said *John Haine* and others were bound to the said *J. Heckert* as guardian of the plaintiff. The evidence was objected to by the defendant, because there was a receipt indorsed on the bond to which there was a subscribing witness, who alone, as the defendant contended, was competent to prove the payment. The bond had been delivered to the obligor and cancelled, and the court admitted the evidence of the said *John Haine* to prove the payment of the money, and the cancelling of the bond. If

The account kept by the intestate as guardian of the plaintiff, and containing receipts and payments of continental money, but not rendered by him *on oath,* according to the Act of 1781, is not evidence: neither is the account of the same receipts and payments evidence, if rendered by his administrators upon oath as to their belief, accompanied by an offer on their part, to answer on oath any questions touching the amount: nor are they both together evidence.

it had been a question whether a *receipt* had been *given* by John Heckert, the subscribing witness ought to have been produced, but the plaintiff's case did not require that he should prove the *written receipt.* It was enough if he proved a receipt in fact, and of that the oath of the person who paid the money was good evidence. There was no occasion to produce the bond which had been cancelled; and the production of it could not place the plaintiff in a worse situation in point of evidence, than if it had not been produced. I am of opinion, therefore, that the evidence was properly admitted.

2. The counsel for the defendants offered *Peter Heckert*, one of the defendants, as a witness, he having released all his interest in the estate of his father *John Heckert*, deceased, and having offered to pay into Court all the costs of the suit in case he should be admitted as a witness. But the Court rejected him. I am not quite satisfied about this offer to pay the costs. To make him disinterested so far as respects costs, there should be a payment not only of all costs accrued at the time of payment, but also of all that might afterwards accrue in the cause; and it is not clearly expressed whether the offer extended so far. It is urged that the offer to pay was sufficient, because there could be no occasion to pay until it was known whether he would be received as a witness. The usual practice is to make a release of interest in cases where a release is necessary, before the Court decide on the competency of the witness. But I do not think it necessary to determine, whether the offer to pay costs was sufficient, because on another ground I think the witness was inadmissible. He was one of the administrators of his father, and a defendant in the action; and as such the plaintiff had a right to judgment against him, in case he obtained a verdict. One of the issues joined was on the plea of *plene administravit*, and at the time the witness was offered, it was uncertain how the jury might find. If the verdict had been against the defendants, on that issue he might eventually have been rendered personally responsible, not only for the costs but the whole damages; for it might be that the assets of the intestate had not been administered according to law. In this state of uncertainty it could not clearly appear that the witness was disinterested, even if he had made an

1813.

HECKERT
v.
HAINE.

1813.

HECKERT
*v.*
HAINE.

absolute payment of all the costs. I am therefore of opinion that the Court were right in rejecting him.

3. The defendants then offered in evidence, a book which had been kept by *John Heckert* in his life time, containing an account of his receipts and disbursements as guardian of the plaintiff. This being rejected by the Court, the defendants offered in evidence an account rendered by themselves on oath, of the receipts and disbursements, &c. of their intestate as guardian of the plaintiff. This account was drawn up about the time of the trial or shortly before, and the oath was that " to the best of their knowledge and belief, it was a true account, &c." They offered also to answer on *oath* any question touching the account, which the plaintiff might think fit to ask them; but this evidence was also rejected by the Court. Last of all, the defendants offered again the book of the intestate (which had been offered before,) together with their own account which had been offered before, supposing that by being connected they might mutually support each other. They were again rejected by the Court.

The three last pieces of evidence rest upon the same foundation, and will be best considered together. At common law there could be no pretence for offering the account kept by the intestate without oath, or the account of the defendants themselves on their own oath, not exhibited to the Orphan's Court and settled there, as it ought to have been. But the admissibility of this evidence depends on an act of assembly passed 21st of *June* 1781. The paper money which had been made a legal tender for debts, had at this time sunk so low in value that it was found necessary to repeal the acts by which it had been made a tender. They were accordingly repealed by the second section of this act. But the unqualified repeal of the tender laws might have thrown great hardships on persons who had contracted debts payable in the common currency of the country, and on all who as agents, attornies, executors, administrators, or guardians, had been obliged to receive the circulating paper in trust for their principals, &c. To protect such persons it was enacted by the twelfth section of the same act, that where any sheriff, agent, factor, guardian, trustee, &c. have in right of their offices, trusts or appointments received any sum or sums of money for the use of his or their principals, &c. and have

applied the same to their own private use, in such case he or they shall be accountable to his or their principals, &c. for so much gold and silver money, as the said bills of credit or other money so by them received, were worth at the time of such application, according to the rate of depreciation established by an act passed 3d *April* 1781; and where any such sheriffs, agents, guardians, &c. having received any sum or sums of money as aforesaid, shall render an account *on oath*, of the manner of his disposing of the same and of the profit or loss arising therefrom, and the principal or other person interested as aforesaid, shall not be able to disprove the same, in case of loss, then and in such case such profit or loss shall go to the benefit or prejudice of the principals, &c. allowing to such sheriff, agent, &c. a reasonable compensation for management of the business; but if the said sheriff, agent, &c. shall decline to make such oath and render such account, it shall be presumed that he applied the said monies to his own use, and he shall be accountable therefor in the manner before mentioned.

The defendants do not come within the provisions of this act, which requires an account on oath of the guardian himself. There was good reason for this, because none but the guardian can be supposed to have a personal knowledge of the transactions touching his ward's estate. But it is said that by this construction many guardians may be injured, who had received paper money and died before the making of the act. It is not to be presumed that many accounts of such ancient date remain at this day unsettled, so that very little injury could arise from the construction which has been mentioned. There is no occasion however to decide upon cases not before us. What equitable extension of the liberal words of the act, the Court might think itself justified in giving in case of extreme hardship, I will not say. The original defendant in this action had twelve years after the commencement of it, to render his account on oath; having omitted it for so long a time, it may be fairly said that according to the words and spirit of the act, he has *declined to make his oath.* Such gross negligence, if negligence it be, deserves no countenance. But it may be suspected that the guardian did not choose to make an oath on the occasion, and intended to rest his defence on other evi-

1813.

HECKERT
*v.*
HAINE.

dence, or on the defects of the evidence which the plaintiff might be able to produce. Be that as it may, the defendants have not offered what the law required. They have offered only *their belief on oath*, of transactions to which they were not privy, and an account *without oath* in the hand writing of their intestate, who transacted the business, who had ample time to verify it by oath, and who omitted it. I am of opinion therefore that the evidence was very properly rejected by the Court of Common Pleas, and that the judgment should be affirmed.

BRACKENRIDGE J. The plaintiff, alleging that the intestate whom the defendant represented, had in his capacity of guardian, received money for the use of him the plaintiff and those whom he represented, offered the evidence of a third person who had paid the money, together with a paper purporting to be a bond cancelled, on which it had been paid, and a receipt thereon indorsed with a subscribing witness to the receipt. Had the receipt been offered singly, with an offer to prove the hand writing of the intestate giving the receipt, would it come within the rule that the subscribing witness must be first called? The third party producing the receipt against the intestate might be held to this strictness, for he had called him to subscribe; but to the plaintiff he could not be supposed to be known. To the plaintiff producing this receipt, it might be said there is better evidence, that of the party to whom the receipt purports to be given; produce him and let us hear him speak; that would be at least of equal if not superior grade with the receipt in his possession, and more satisfactory, for he could tell us how and on what account he paid it. But the person paying the money is produced, and the how and on what account he paid it, is shown by the cancelled paper which he holds in his hand, and as a circumstance of further evidence in corroboration of his account, a receipt indorsed upon it is shown. The plaintiff would seem to have begun right and to have given the best evidence in establishing the fact. He is not bound to call the subscribing witness to the receipt, nor to shew the receipt itself. The receipt was a voucher for the party paying the money; but the plaintiff has nothing to do with it, provided he can prove the paying, independent of it. The

receipt is a matter collateral to his case and not directly in issue. If evidence had been given to affect the credit of the witness testifying that he had paid the money, and shewing the bond and receipt, time might be given to the defendant representing the intestate to look up the subscribing witness; but the plaintiff could not be called upon to produce him, under the rule of superior evidence in the nature of the case and in his power to produce. He could not legally be supposed to be in his keeping, as a witness called by a party to subscribe a writing is supposed to be. But cases are produced from the *English* books, which would seem to shake the solidity of this doctrine, and a determination of our own, said to be in a Circuit Court, is also alluded to. But the necessity of producing a subscribing witness to the writing, only on the plea of *non est factum* to a bond or *non assumpsit* to a note, has always appeared to me to be carrying the rule far enough. In the case of a third person, even where it is the foundation of a suit and comes in collaterally, I do not see the reason. But that is all the length to which the *British* cases would seem to have carried it. It would seem to me that the present would be a case distinguished from these cases, and would be carrying this technical rule farther than has been done. It has always been my way of thinking to restrain rather than to extend the rule. I should think under the circumstances of this case the evidence was admissible. This was my way of thinking on a former trial of this cause, and the judgment of the president to whom this writ of error is directed, is in support of my opinion. I will not undertake to reverse his decision, and depart from my own former opinion at the same time. I would then restrain the rule to a case where the execution of a writing is directly in issue, unless notice shall have been given that it was material to have this proof; as where *A* agrees to pay to *B* a bond or note from *C* to *B*, it would be going a great length even on notice given, to say to *B*, you must produce the subscribing witness of *C's* bond or note to you, for in fact *C* never gave you a bond or executed this writing. It is not clear to me that such evidence could be at all admissible; but certainly not unless such defence was expressly set up and notice of it given. Coming in collaterally it would be taking a party by sur-

1813.

HECKERT
v.
HAINE.

prise, to render it necessary to produce the subscribing wit-
ness. It is a matter of inconvenience in all cases to produce
the subscribing witness, where the hand of the party can be
proved; and I would not carry the rule beyond the case
where the writing is contested, and notice of this given by
the plea, or special notice where the plea does not give it.
But here the party paying the money is better evidence
than the receipt or the subscribing witness to it.

With regard to the question under the *second exception*,
the competency of a party to the action, having no other in-
terest but as to the costs in the event of the suit, an offer to
pay the costs is not sufficient. A sum sufficient to cover the
costs must be paid, that he may cease to have an interest in
the event of the suit, let the verdict be which way it may. The
party therefore nominal in the first instance, or made nomi-
nal by a release of interest, must deposit sufficient to cover
the whole costs, so that at all events they may be paid in
order to render him indifferent. It is the party producing
him in order to have the benefit of his testimony that must
be supposed to pay; and this is no hardship, as he submits
to a certain loss for a certain advantage, in his estimation
at the time greater. It can therefore only be under the act
of assembly in the special case, that the witness in this case
was admissible, if admissible. This act of assembly was
provided in consequence of a peculiar circumstance in the
depreciation of money, and this being made a legal tender
in the payment of debts, so that trustees in any capacity
might be obliged to receive depreciated currency offered in
payment of what was due to those whom they represented,
or for whose use they were rendered compellable to receive
it, the oath of these as to the *kind of money* paid and the
*time* of payment, and all matters of this nature, was made
evidence. For the *time*, where the currency depreciated from
time to time, was material; and the emission of paper money
might be material; for if I recollect right, it was not every
species of bills, state or continental, as it was called, that was
made a legal tender. It might also be material to shew the
necessity of receiving this money, it being tendered; and also
the not being able to exchange it, or to put it out again for
the benefit of those for whose use it was paid, might be ma-
terial. It was in consideration of these things, reconciling

state necessity with justice to trustees and agents, that this act passed enabling them to account, and giving them the privilege of an oath where they could not otherwise establish the truth of the fact, or disprove the allegation that they had received in gold or silver, and were accountable for that sum in specie. This was a privilege secured for the *estate of the trustees* as it would seem to me, so that in case of their *decease*, those interested in the settlement of the estate of the trustees might be heard, not only executors and administrators, but heirs or next of kin, or any to whom the estate of the trustees might come, at least so far as respected those immediately interested. The act has the express words, "*principal or other person interested as afore-*"*said.*" The *aforesaid* may restrain to the trustees or agents mentioned, but persons interested in consequence of a discharge of the trust, would seem to come within the equity of the provision. There is the same equity, and it is within the same reason, that those interested in the estate, especially if these have become at the same time the legal and official representatives of the deceased principals, should have the privilege of their oaths, to establish facts relative to the discharge of the trust, notwithstanding the interest to which they had succeeded in the estate of the principal. I was inclined to this way of thinking when the cause was before me on trial in the Circuit Court, and I incline to that way of thinking still.

As to the exceptions under the third head, I must say the same, as to the *original book* of receipts kept by the guardian. It was admitted by me and I still incline to think that it ought to have been admitted on this trial before the president of the District Court. With respect to the account of the administrators of the guardianship of the intestate, accompanied with the offer of the administrators to be cross examined respecting the said account, and all things touching the same on oath, the only objection I can see is the not being offered to the Orphan's Court in the first instance; for if I am correct in allowing those interested in the estate to be admitted to an oath on the settlement of the account of the discharge of his trust, this would remain the only objection. This was admitted by me on the trial in the Circuit Court, though I thought it a doubtful point, if I remember

1813,

HECKERT
v.
HAINE.

right, whether the Orphan's Court ought not in the first instance to have passed upon it. But I incline to think that on an adversary suit at common law, such an account might be admitted, though it had not come through the medium of the Orphan's Court, or undergone its examination in the first instance; but this I will leave to the Chief Justice without expressing a decided opinion on the case. The special circumstances of the case had weight with me in my opinion on the trial in the Circuit Court, but the facts respecting this do not appear and cannot be taken into view on the writ of error, making no part of the bill of exceptions. The naked question will be that which has been stated, can the official representatives of a deceased trustee, in settling his account with the Orphan's Court be heard on oath under the act of assembly? In the second place, for there are two questions, can the official representatives not having settled the account with the Orphan's Court, be heard otherwise than on an appeal from the Orphan's Court? This I will leave as I have said to the Chief Justice, though I incline now as I did before, to think that they can be heard.

Judgment affirmed.