The opinion of the court was delivered by
Duncan, J
This question respects the validity of a sale oí certain goods by Benjamin Pusey to his sister-in-law Elizabeth Clemson, plaintiff below, defendant in error, who claims them against a levy made by the plaintiff in error, the sheriff of Chester' county on an execution of Joseph Boyd, against Benjamin Puseip *424 subsequent to the date of the sale, but on a judgment previously obtained. After a judgment has been obtained, a conveyance by the defendant of his- goods and chattels, has always been looked on as wearing a deep complexion of fraud, and as subjecting to a very jealous examination, the conduct both of alienor and alienee, and such acts are void both at common law, and under the statute of Elizabeth, if done without consideration, or, though given on due' consideration, if the possession remain with the debtor; whereby he is enabled to deceive the world by holding out a false appearance of property, and that was Twynes’ case, 3 Rep. 85. The issue between the parties was, whether the assignment by Pusey to Miss Clemson, was valid, or was fraudulent according to the policy of the law. We are not discussing a question of contract executed or executory between the parties to the contract, but whether according to that policy, there was a contract 'binding on Boyd the judgment creditor; and Our attention is first called to the written instrument of the 31st December; 1821, denominated in the bill of exceptions, a bill of sale. There was no doubt but that two articles, the lime and the geese, were interlined after the instrument was signed, and witnessed; and delivered, and without any assent by Pusey, or subsequent ratification, and done by the assignee, who claimed the lime under the bill of sale, after it had been levied on by the sheriff; though it is not now claimed, or suit brought for it. Now, was the paper evidence to go to the jury; of the contract between Pusey and Miss Clenisonl It is not, whether the original contract was avoided by the falsification of the evidence of it; but whether, where a party to a written instrument wilfully alters it, for the purpose of covering property from execution, that instrument so altered, can be used as a medium of evidence. It is not an alteration by a stranger, nor an immaterial one. by the party, nor a question of interlineation to be left to a jury to decide, whether made before or after the signature, but where the plaintiff offering it makes it part of her own case, that it was wilfully done for her. The defendant, after the delivery, told the debtor’s wife, there were two or three things forgot, and desired her to set them down, which she did, and being afterwards informed, this was improper, the plaintiff said she would erase them. Formerly, the judges, if a deed was rased or interlined, declared it to be void; but in modern times, it is referred to' the jury. But where it is part of the plaintiff’s own case, that the deed was altered, fraudulently altered, as I understand the principles of the law of evidence, such altered or falsified paper Cannot be received in evidence. For when the assignee added to it, it was a new making, and framing the contract, or the evidence of it, and it is quite immaterial, whether the action is founded on the written evidence, or it is exhibited as evidence of the contract. An interest that would pass without deed, would pass though the deed was afterwards interlined, or altered; for the interest thereby vested doefe *425 not return back again, for the deed is only evidence that it did pass, but by statute it is necessary in many cases, to show the writing under the hand of the party, and where such writing is necessary to support the claim, the party claiming must make it out by the very perfect and unaltered writing on which the contract was founded; otherwise, where such writing is considered not as a formal instrument, under which title passes, but as mere general proof of an agreement. 2 Roll. ab. 29. In Lofft’s Gilb. 650, in the ease of the altered deed, it is put on the rational ground, that the rasure does not destroy the estate, though it destroys the deed. Cro. Car. 399. The ease cited from Massachusetts can only be supported on this principle. There the exception was not to the evidence, but whether the alteration revested the estate; and one ground of the decision was, that the alteration was done innocently, and tono injurious purpose. ■ The law of evidence rests on principles, and has accommodated, and is accommodating itself to the changing state of society. We do not now, said lord Mansfield, sit here to take our rules of evidence from Siderfin and Keble. Anciently almost all writings were by deed, and it was doubted down to the King v. Ward, 13 G. 1, 2 Ld. Ray. 1464. 2 Stra. 147, whether a forgery could be committed of any other writing than a deed, will, or record, and there the forgery of a mere informal order respecting a credit for a quantity of allum, was determined to be indictable at common law as a forgery; because the nature of the offence was the same, et ubi eadem est ratio, eadem est leg. The fraudulent alteration of this paper, give it what denomination you will, is a forgery punishable at common law. There is no magic in a name. Be it a receipt, a bill of sale, assignment, written agreement; call it what you will, it is a writing, the fraudulent alteration of which is a forgery, falling within the exact definition of the officer. I by no means intend to consider those ladies as criminals, or arraign them as culprits on the charge of forgery. Their conduct has every thing to palliate it. No doubt, they never imagined they were committing an act of moral turpitude. The very candid and simple relation of Mrs. Pusey acquits them of all that. They thought it no more harm to mend this instrument, than to mend a ruffle. But courtesy to the sex, indulgence to their habits and course of life, mingling little in affairs of this kind, and the real simplicity which marks this alteration must not make us forget the civil rights of others; and though we may acquit them of crime, yet it does not follow that any aid should' be derived from the paper. It is not an unreasonable infliction to say, though the alteration of this paper does not destroy the sale, does not depriveyou of an opportunity of proving the sale aliunde, yet having falsified, you have destroyed It, you have suffocated it. For venial as it may be in foro conscientise, it is so far fraudulent, that it ceases to exist for any legal purit is of all credit. we it the *426 mild appellation of pious fraud, still it is, by the policy of the law, fraudulent, and attended with all the noxious and vitiating qualities of fraud, as it is said of the juramentum scriptum est indivisibile, et non est admittendum in parte verum et in parte falsum; falsum in uno, falsum in omnibus. You shall not recover through the medium of a falsified paper. Prove an honest case in any other way than by a dishonest paper. This, I think, may be done, laying aside the paper; for where there is a subscribing witness to a receipt, whom you cannot produce, other evidence may be given of payment by witnesses. Haine v. Hechert, 6 Binn. 16. So here, the fact of sale may be proved by other witnesses. If the subscribing witnesses were dead, proving their hand-writing, the falsified instrument would be evidence of the sale of the lime. This would be a consequence and amost unjust one. All written contracts, whether by deed or not, are intended to be standing evidence against the parties entering into them, and so much of the business of the world depends on this kind of evidence, that it should be fortified by every legal sanction, and therefore it is, that all instruments altered in a material part are thereby avoided. There is a most beneficial effect resulting from this, that persons having the custody of these will not alter them for fear of losing their security, and the reason applies as well to instruments, intended as standing evidences of the contract, as instruments which are depended on as the sole security; and the true reason is, that it would be extremely dangerous to permit the party to recover by the medium of written evidence as it originally stood, after an attempt to commit a fraud by covering property from execution not included in the written contract. The policy ofthelawis, thataman, (nor woman either,) shall not take the chance of committing a fraud, and when the fraud is detected, use the instrument, as if he never had altered it. In that case the law intervenes and avoids the falsified instrument or writing. If it avoids it, it does not do so partially, but for every legal purpose, and in reason there can be no difference, whether it is made use of as an instrument of title, or evidence of it; both are within the same reason, and ought to be within the same law. I have not been able to find a decision in specie the same, but in reason, and by analogy to the principles of evidence, it appears to me clear as any axiom in law, that the writing is defunct, and ought not to have been received in evidence, and I think also the evidence of Kinsey as to Peter, (whom Mr. Pusey testified, Miss Clemson had hired to take care of the cattle, &e.) ought to have been received. It was evidence in an important'point, to prove the possession of 'Miss Clemson, by means of the hiring of Peter, but the question respected the actual, visible, notorious possession. It then became undoubted and very important evidence to show how the matter really was, to prove that while Peter was employed; he and Pusey both declared that he was the hireling of Pusey; and when the question was put from *427 what source you had knowledge, the court took the witness out of the hands of the counsel, and put certain prefatory questions, and restrained the witness from giving any evidence of any conversation between Peter and Pusey as to a hiring, unless it was in the presence of Miss Clemson, or proof of an original hiring. This-was not mere hearsay evidence; it was the best evidence the nature of the thing was capable of; the declaration of the master, and of the servant at the time they were employed about the property. It was not to charge Miss Clemson, nor to destroy a contract by a conversation between others; but the declaration of persons in possession, in what character they were in possession. It was the ?'esgesta itself. It was very proof of actual possession in Pusey. It destroyed the colourable possession of Miss Clemson by means of Peter, and showed the reality of the possession to be Pusey’s. Peter had before been in the employment of Pusey in the same way; he continued to act under his orders, was acting under his orders at the very time the witness spoke of. It was much stronger evidence to show the unaltered course of possession in Pusey than the evidence by Mrs. Pusey of a hiring by Miss Clemson was to show Ihe contrary. The declaration of a tenant in possession is constantly received, as to whom he held under; not as evidence of title, but as evidence of possession, and the character of the possession. I am, therefore, of opinion, that the witness should have been suffered to prove the conversation between Pusey and Peter about the hiring, and that he was then acting as the servant of Pusey.
The points on which the instruction of the court was requested by the defendant in error, are not stated with precision. These are more abstract questions of law, than predicated on any statement of the facts given in evidence. This is always wrong, nor was the court bound to answer them in that form. The answer to the first point was correct. It was not necessary that the paper should be delivered to the assignee in the presence of the subscribing witnesses. It was not a deed taking effect from delivery. The witnesses do not state it as a deed delivered in their presence. She had possession of it by the delivery of Pusey.
The 2d was an abstract proposition which the court properly answered in the affirmative. Had the question been put to the court in this form, whether the possession, as proved by the defendant was sufficient to vest property in Miss Clemson, against the creditors of B. Pusey, the answer should have been, I apprehend, that it was not. There was no contested fact to be submitted to the jury; nothing from which a continued legal possession could be inferred. There was no real change of possession. Every thing continued in the same state occupied and used in the same way, and by the same persons, after as before the sale. Miss Clemson was an inmate in the house before: she continued so after the sale. Peter was a hireling in the family before, he continued so after. All things remained in statu quo. No one coming to deal with Pusey could *428 possibly discern any alteration. Every act of ownership which the the property was susceptible of, went on in the old way. The possession of Peter was entirely colourable. He just did as he had done before; acted by order and under the direction of Pusey. The sale was inconsistent with a continuing possession in Pusey. An absolute unconditional assignment of goods, the former owner continuing in possession of them, is not barely evidence of fraud, but it is fraud itself, unless where the possession is consistent with some condition or trust expressed in tire assignment, and unless the court are prepared to unsay and to unsettle all that was said and settled in Clow v. Woods, 5 Serg. fy Rawle, 275, this transaction was fraudulent and void as to creditors. That case was very fully argued, and the judgment given on much deliberation We adopted no new principle, set up no new doctrine, but allowed a stream of authority, which established the law, that an unconditional sale, where the possession does not accompany and follow the assignment, is, with respect to creditors, on a sound construction of the statute of Elizabeth, a fraud, and should be so declared by the court. I now speak of things capable of delivery. There cannot be a concurrent possession in the assignor and assignee; it must be exclusive, or it is deemed colourable and fraudulent. To defeat the execution, there must have been a bona fide substantial change of possession. It is mere mockery to put in another person to keep possession jointly with the former owner. A concurrent possession with the assignor is colourable. I do not put the case on the ground of actual fraud and want of consideration. I presume the debt of Miss Clemson to be a just one, which her brother-in-law ought in moral duty to have secured, and in point of honour to have preferred. But on the policy of the law, looking to general consequences, without turning to the right or to the left, as particular cases of hardships may occur, the plaintiff’s own case showed a visible possession to all the world, remaining in the debtor, just as it did before the assignment. There was no weighing of evidence, no inferential circumstances, nothing from which a jury could draw a different conclusion.
The court erred in the answer to the 3d proposition of the defendant in error, as I have before stated. The alteration rendered the writing null and void to all purposes. Master v. Miller, 4 T. R. 424, was adopted by this court in the Bank of the U. States v. Russel & Boone, 3 Yeates, 391, and there it was determined, that the alteration of a promissory note by the payee, whereby the time of payment was retarded, avoided the note in the hand of an innocent indorsee.
The 4th specified error does not appear on the record, and the court will not review evidence of a fact to reverse a judgment. The declaration lays the cause of action as between the teste and return of the writ. The day when the writ issued is no part of the record. The memorandum of the day when the writ was taken out *429 on the issuing docket, might be evidence of the fact in a case requiring proof; as of the day when a writ issued to save the statute of limitations, on a replication of assumpsit infra sex annos; or it might be shown on the trial as evidence that the defendant had shown a cause of action subsequent to its commencement when the jury would be directed, to find against plaintiff, or he become non-suit. Though in the formal making up of a record, the date of the time of actually issuing process is never inserted, because it is no part of the record, and the prsecipe is not, to this purpose, a part of the record, courts will use it to advance justice by amending writs agreeably to the prsecipe, but never to defeat a judgment. But this very point was settled in the court of errors and appeals. Skinner v. Robeson. And the verdict would cure it, for it could not be found for the plaintiff but on evidence of a causé of action, a taking before the action brought. 4 Mass. 264. But for the other caus e, the judgment is reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de novo awarded.