## IN BANCO.

---

### J. C. BULLIONS, on behalf of the creditors of Swan & Clifford, Appellant, *adv.* LORING BROTHERS & CO., Appellees.

The words, " absent creditors," in the 11th Section of the Bankruptcy Law of 1848, includes all creditors who from any cause are absent from the kingdom when claims are being proved before the Commissioners, whether such creditors be residents here, or foreigners who have never been in this kingdom.

When claims presented to the Commissioners are disputed, they must be proved by legal evidence, as in a court of law.

Where the subscribing witnesses to the execution of an instrument are resident without the kingdom, secondary evidence will be admitted to prove the execution. (See Fell *et als.* *vs.* Parke, July Term, 1855.)

In case of a negotiable note, the execution of which is attested by witnesses who are without the jurisdiction of this kingdom, it is sufficient for the plaintiff to prove the handwriting of the maker, together with a distinct admission by the maker that he owes the debt.

The decision of the court was delivered by JUDGE ROBERTSON.

AA

This matter comes before us on appeal from a decision of the Commissioners in Bankruptcy on the estate of Swan & Clifford, of Honolulu. This is the first appeal that has been taken under the statute passed by the legislature of 1855, allowing appeals to this court from the decisions of Commissioners in bankruptcy.

It appears that the commissioners, by virtue of the power vested in them by the 11th section of the "Act relating to Bankruptcy," passed in 1848, appointed Mr. A. B. Bates to represent the interests of the appellees, Messrs. Loring Brothers & Co., of Valparaiso.

The record sent up by the commissioners, shows that on the 26th day of September last, Mr. Bates presented to them a claim on behalf of the appellees, for the sum of $66,857 66, and interest at one per cent. per month, based upon a promissory note of which the following is a copy:

$66,857 66                    SAN FRANCISCO, 1st August, 1852.

We owe and promise to pay to the order of Messrs. Loring Brothers & Co., of Valparaiso, the sum of sixty-six thousand, eight hundred and fifty-seven dollars 66-100 American currency; said sum to be paid as follows:

Five thousand dollars on the 1st day of November, 1852.
Five thousand dollars on the 1st day of December, 1852.
Five thousand dollars on the 1st day of January, 1853.
Five thousand dollars on the first day of February, 1853.
Five thousand dollars on the first day of March, 1853.
Five thousand dollars on the first day of April, 1853.
Five thousand dollars on the first day of May, 1853.
Five thousand dollars on the first day of June, 1853.
Five thousand dollars on the first day of July, 1853.
Five thousand dollars on the first day of August, 1853.
Five thousand dollars on the first day of September, 1853.
Five thousand dollars on the first day of October, 1853.

And the balance, say six thousand eight hundred and fifty-seven dollars, 66-100, on the first day of November, 1853, all which payments to be made punctually and without defalcation, being for value received by us from the said Loring Brothers & Co. We also agree to allow them five per cent. per month interest upon the whole amount, in the case of non-payment on the dates above mentioned. The word *interest* interlined before signing.

Signed in San Francisco on the 10th day of August, 1852.
Signed in presence of "Alex. B. Grogan, Wm. M. Lent."

The claim was admitted by the commissioners upon the testimony of C. F. Hussey, late book-keeper to the firm of Swan & Clifford, who swore that the signature to the note is genuine, and that in January, 1855, he had balanced the account of Loring Brothers & Co , by an entry to "Profit and Loss account," by direction of Mr. Swan; whereupon the appellant gave notice, in due form, of his intention to appeal on behalf of the creditors generally, and filed the usual bond.

In addition to the testimony of C. F. Hussey, given before the commissioners, the court permitted other evidence to be adduced on behalf of the appellees. Several witnesses were called to the stand, among whom was Mr. Clifford, one of the bankrupts, who testified to the effect that the signature to the note looks like the handwriting of his partner, Swan; that he had never seen the note until recently,

when he saw it at a meeting of the commissioners; that Swan had been in the habit of signing notes for the firm, but that he had never told the witness of his having given any note to Loring Brothers & Co.,' for a balance of account, and that he was not aware of any note having been given to the appellees by the firm of Swan & Clifford; that all the knowledge he possessed on the subject he had derived from the entries on the books of the firm. Witness stated that he believed Swan was a partner in the firm of Eveleth & Co., in San Francisco, in the month of August, 1852.

Mr. J. F. Colburn testified to the effect that he was in the employment of Eveleth & Co., at San Francisco, in August, 1852 ; that Swan showed him a press copy of a promissory note which he said he had given to Mr. Gabler, of the firm of Loring Brothers & Co., who was then in San Francisco; that he did not know to whom the note was made payable, but he believed the note produced at the trial must be the original of which he was shown a copy, from the aggregate amount of it, and from its being made payable in sums of $5000; that he understood the firm of Grogan & Lent were agents for Loring Brothers & Co., in reference to this transaction; that from his knowledge of Swan & Clifford's business he had reason to believe that, at that time, they owed Loring Brothers & Co. from $50,000 to $60,000; and that Swan told him he had given the note to Mr. Gabler in settlement of the claim, in order that he (Swan) might be able to return to Valparaiso along with Mr. Gabler

Some other testimony was introduced on behalf of the appellees which we do not regard as bearing upon the issue, (except as it bore on the signature) as their claim rests entirely upon the note, and by that must stand or fall; for if the appellees have succeeded in proving the execution of the note, by legal evidence, that is sufficient for them, and throws the *onus* of showing fraud or a want of consideration upon the appellant.

Several witnesses were brought forward to show that the parties, whose names appear as attesting witnesses to the note, are not within this kingdom, but that they were and probably are still, residents of San Francisco.

At the hearing, counsel for the appellant objected to the claim of Loring Brothers & Co. being received against the estate until all the creditors of Swan & Clifford in this kingdom are first paid. Counsel took the ground that the words " absent creditors," as used in the 11th Section of the "Act relating to Bankruptcy " must be construed to mean creditors whose domicil is in this kingdom, but who are absent when claims are being proved before the commission, and should not be construed to include foreign creditors. This objection was overruled by the court, which held that the evident intention of the legislature was to include in the term " absent creditors," all creditors who from any cause were not at the time within the kingdom, whether residents, or foreigners who had never been within this jurisdiction at any time.

In the course of his very able argument, on summing up the case, the counsel for the appellant relied upon the following points, which he made in opposition to the claim of the appellees.

*First,* That the execution of the note has not been duly proven; that to prove a document, the execution of which is attested by subscrib-

ing witnesses, those witnesses must be produced, if within the juris-
diction, and if on diligent inquiry they are ascertained to be without
the jurisdiction, then the next best evidence is the proof of their
hand writing; that such evidence must be given before proof of the
maker's hand writing, or of his admissions, can be received or con-
sidered.

*Second,* That the appellees have proven the the signature of Gro-
gan & Lent to the endorsement dated 30th September, 1853, re-trans-
ferring the note to them.

*Third,* That on the 26th of September last, when the note was
presented to the commissioners in bankruptcy, Mr. A. P. Everett,
cne of the commissioners, was the holder and legal owner of it, as
appears by the indorsement dated 30th June, 1855.

The learned counsel for the appellees conceded the general rule
to be that when the execution of a document is attested by subscrib-
ing witnesses, they must be called if within the kingdom, but contends
that when it appears that they are without the jurisdiction, the ad-
mission of the party is sufficient. He contends also that he has
proved the signature to be in the hand writing of Swan; that the
court in adjudicating upon this claim should act the part of what is
called a court of conciliation, and ought not to be bound by the
strict rules of the common law on the subject of evidence.

Let us notice first the last part of the argument of the counsel for
the appellees He laid great stress on the fact that our statutes do
not prescribe to us the common law rules of evidence, in the hearing
of claims in bankruptcy. He might, with truth, say the same of al-
most any other kind of suit or proceeding, for, with very few excep-
tions, our laws are silent on the subject of evidence, leaving us to be
guided by the general principles which are recognized in civilized
countries, and providing that we may adopt in any case the reason-
ings and analogies of the common law, or of the civil law, so far as
they are deemed to be founded in justice, and not in conflict with the
laws and usages of this kingdom.

It is provided in section 9th of the "Act relating to Bankruptcy,"
that "debts may be proved before the commissioners by the oath of
the creditors, but when the debtor or any creditor shall dispute the
amount claimed. the commissioners shall compel the claimant to prove
his debt by testimony independent of his own oath." Such is the
general provision of our bankruptcy law, and we think the fair and
reasonable construction to be given to it is, that when a claim is dis-
puted it must be proved in the ordinary way, by legal evidence.

Can any good reason be shown why the rules and principles, which
are applicable to cases at law generally, should be relaxed in favor
of the admission of claims either for or against a bankrupt estate ?
Because the fund from which the creditors must look for payment, is
notoriously insufficient to meet their claims in full, is that a good rea-
son why unusual facilities should be afforded for the admission of de-
mands which, if allowed, must still further reduce that fund? Would
such a principle be fair and just towards those creditors whose claims
are undisputed, or stand substantiated by irrefragable proofs? We
think not. On the contrary, we think the very fact that the fund is
inadequate to meet all the claims against the estate, is a strong reason
why the creditors generally may, justly, interpose every good legal

defence against the admission of doubtful claims, and require that they shall first be proved by legal evidence. Particularly, we think, is this just in the present instance, where the claim is of such magnitude as, if allowed, to swallow up a very great proportion of the assets.

If the argument of the learned counsel is good in this case, then the same principle must be extended to the other cases, in which several of the resident creditors of Swan & Clifford have appealed from the decision of the commissioners, by which large portions of their several claims have been disallowed, as we understand, on legal grounds. The same rules and principles must be applied, impartially, to all. And why not extend the principle to suits by the assignees, against other parties, on behalf of the estate? For those as well as this, are suits arising out of the bankruptcy. The case of Abbott *vs.* Plumbe, Douglas' Rep., 215, was a suit by the assignees of a bankrupt, but no relaxation of the rule of evidence requiring the production of a subscribing witness, was claimed on that ground.

The question for the court to decide is, have the appellees substantiated their claim by legal evidence?

It is a long established and uniformly observed rule of evidence in the courts of England, that all written instruments, the execution of which is attested by subscribing witnesses, must be proved by those witnesses. To this rule there are some exceptions, by which, under certain circumstances, the proof by the subscribing witnesses may be dispensed with, and secondary evidence will be admitted to prove the execution of an instrument. Philips on Evidence, vol. 2, chap. 6; Starkie on Evid., p. 370, *et seq.*

The same general rule is recognized throughout the United States, as far as it applies to all instruments under seal; and in some of the States, we believe to all written instruments, whether under seal or otherwise. Greenleaf on Evid., p. 637, vol. 1.

In the case of Doe *vs.* Durnford, 2 Maule & Sel., p. 62, in the court of King's Bench, the rule was held to apply to an attested notice to quit; in Higgs *vs.* Dixon, 2 Stark. R. p. 180, it was applied to a warrant to distrain; in Jackson *vs.* Root, 18 Johnson, p. 80, it was held applicable to a receipt, which does not appear from the report to have been under seal. See also on this point, Heckert *vs.* Haine, 6 Binn. 16; Wishart, *vs.* Downey, 15 S. & R. 77; Wylde *vs.* Porter, 1 Adol. & Ellis, 742; Richards *vs.* Frankum, 9 Carr & Payne, 221.

The practice seems to vary considerably among the different States of the American Union. In some of the States the subject is regulated by express legislation, while in others the courts seem to have relaxed the rule, at least in its application to instruments not under seal.

Starkie on evidence, at page 371, states the reason of the rule as follows: "The law requires the testimony of the subscribing witness, because the parties themselves, by selecting him as the witness, have mutually agreed to rest upon his testimony in proof of the execution of the instrument, and of the circumstances which then took place, and because he knows those facts which are probably unknown to others." Professor Greenleaf says, "Various reasons have been assigned for this rule; but that upon which it seems best founded, is, that a fact may be known to the subscribing witness, not within the

knowledge or recollection of the obligor; and that he is entitled to avail himself of all the knowledge of the subscribing witness, relative to the transaction. The party to whose execution he is a witness, is considered as invoking him, as the person to whom he refers, to prove what passed at the time of attestation." (Greenleaf on Evid. vol. 1, 636.) In the case of Rex vs. Harringworth, 4, M. & S., 354, Lord Ellenborough said: "It does not follow, that because the subscribing witnesses are the plighted witnesses to prove the execution, they must be the best witnesses, for others may know more of the transaction than they; but inasmuch as they are the plighted witnesses, the knowledge they have upon the subject is essential."

Among the exceptions to the general rule requiring the production of the attesting witness is that, where he is resident beyond sea, or where he is out of the jurisdiction of the court. In such case, secondary evidence of the execution of the instrument will be received. See note to Whittemore vs. Brooks, Greenleaf's Rep., vol. 1 p. 56, and cases there cited; Phil. on Evid., vol. 2, p. 210.

The counsel for the appellees claims that he has brought this case within the exception, by having proved that the attesting witnesses to the note are resident without our jurisdiction. Appellant's counsel argued that the court ought to require the appellees to show that every effort had been made to ascertain whether or not the witnesses were within our jurisdiction, by subpœna, or at least by diligent inquiry, on the part of those interested.

Had it been made to appear in proof, that these witnesses had resided in this kingdom at any time subsequent to the alleged execution of the note, we would feel bound to require from the appellees, satisfactory evidence that the witnesses were not now to be found within our jurisdiction; but all the evidence given at the hearing tends to show, that, at the time referred to, Grogan and Lent were residents of San Francisco; that they were so recently and probably are so now, and that they have never been in this kingdom. We think this is sufficient, and consider the case as coming fairly within the exception, as contended for by the appellees.

It being shown then, that the attesting witnesses are resident beyond sea, and that, therefore, secondary evidence is admissible, the next question is, what should that evidence be?

Upon this point the English authorities speak an almost uniform language, to the effect that, where the subscribing witnesses cannot be procured, and their absence is satisfactorily accounted for, the proper proof is by giving evidence of their hand writing, or at least of that of one of them, where there are several. (Starkie on Evid. p. 379.) The following cases, however, show some variety of decision.

The case of Barnes vs. Trompowsky, 7 Term Rep., p. 265, was an action of debt on a charter party of affreightment, not under seal. The instrument had been executed at Riga and was attested by one Knieriem, whose seal as a sworn broker was affixed to it. At the trial at York, before Rooke, J., a merchant long conversant in the Russia trade, and in habits of correspondence with the defendant, was called as a witness and proved the hand writing of the defendant, to the charter-party. He also proved that, eight years previous, a sworn broker named Knieriem was living and resident at Riga, and

he had not heard of his death. Another witness proved that he knew Knieriem acting as a broker at Riga seven years previous; but neither of these witnesses knew his hand writing. It was objected amongst other things, that the charter-party was not duly proved, but the learned judge allowed the case to go to the jury, and the plaintiff recovered a verdict. A rule was obtained calling on the plaintiff to show cause why the verdict should not be set aside, and a new trial had. In the court of King's Bench, Lord Kenyon, C. J. said, "We ought not to suffer this point to be called in question. I do not say that proof of the hand writing of the contracting party is not under any circumstances sufficient where there is a subscribing witness; as if no intelligence can be obtained respecting the subscribing witness after reasonable inquiry has been made; but here the witness is a known person residing at Riga. Generally speaking every instrument, whether under seal or not, the execution of which is witnessed, must be proved in the same manner, regularly by the witness himself if living; if dead, by proving his hand writing; if residing abroad by sending out a commission to examine him, or at least by proving his hand writing, which last indeed is a relaxation of the old rule, and admitted only of late years." The other judges concurring, the rule was made absolute, thus holding that the proof of the witness's hand writing was the proper secondary evidence, and could not be dispensed with by proof of that of the defendant merely.

In the case of Coghlan *vs* Williamson, Douglas's R. 93, an action of debt upon a bond, it appeared that the subscribing witness had sailed for India, as a cadet, five years previous to the trial; and it being proved that the plaintiff had applied to the defendant for payment of the bond, and that the defendant acknowledged the debt and offered to pay a part of it immediately and the rest at the end of the year, and the defendant's hand writing being also proved, Lord Mansfield held this to be sufficient and directed the jury to find for the plaintiff.

In the case of Wallis *vs.* Delancy, (see note C, at p. 266, vol. 7, Term Rep.) an action on a bond executed in New York, proof was made of the hand writing of one of the subscribing witnesses. Objection being made that this was insufficient, Lord Kenyon called on the plaintiff to prove also the hand writing of the obligor, and to give some evidence that the second witness was also abroad, which was done, and held to be sufficient to go to the jury, his Lordship remarking that "the expense of sending out a commission would in many cases be more than the value of the sum in dispute."

In the more modern English cases, proof of the hand writing of the subscribing witness, together with some evidence to identify and connect the party with the instrument, has been held sufficient, without proof of the hand writing of the latter. See Currie *vs.* Child, 3 Campbell, 282; Nelson *vs.* Whittall, 1 Barn. & Ald. 19; both actions on promissory notes.

The practice of the American courts we believe has not been uniform upon this point. In the case of Pelletreau *vs.* Jackson, in the Supreme Court of New York, cited by counsel for the appellant, Nelson, J., stated the rule to be that, when the witness is dead, or out of the jurisdiction of the court, and after diligent inquiry no proof of his hand writing can be made; or if, upon like inquiry nothing can

be heard of the subscribing witness, so that he can neither be produced, nor his hand writing proved; in all these cases the execution of the deed may be proved by proving the hand writing of the party, or by his admission that he executed it.  He held also that the same diligence should be exacted in endeavoring to prove the hand writing, that is required in the endeavor to procure the personal attendance of the witness, at least, before the third degree of evidence is admitted, to wit, the hand writing of the party; and that in both cases it should be satisfactorily proved that a reasonable, honest and diligent inquiry has been made, without any evasion or design to overlook the witness, or the means of proving his hand writing.

In the case of McPherson *vs.* Rathbone, 11 Wendell, 98, in the Supreme Court of New York, Savage, C. J., stated the rule to be that when the subscribing witness resides out of the State, or is beyond the reach of the process of the court, proof of his hand writing proves the execution of the instrument; that if the hand writing of the witness cannot be proved, after proper diligence has been used for that purpose, the party must then resort to the same testimony as if there had been no subscribing witness.

In the case of Jackson *vs.* Chamberlain, 8 Wendell, p. 620, after the absence of the subscribing witnesses was satisfactorily accounted for, proof of the hand writing of one of them, and that of the grantor, was deemed sufficient.

In the case of the Lessee of Clarke *vs.* Courtenay, 5 Peters, p. 344, Justice Story stated the rule in reference to instruments under seal, in substance, as it is laid down in the case of McPherson *vs.* Rathbone, cited above.

These cases are strong authorities in favor of the position taken by counsel for the appellant, unless a different rule is to be observed in reference to instruments such as that now before us, from that which is applied to instruments under seal.

There is a class of American cases which lay down a complete relaxation of the rule as far as it is applicable to negotiable paper not under seal.  The earliest of these cases we have found is that of Hall *vs.* Phelps, 2 Johnson, p. 451, in which Justice Spencer, who delivered the opinion of the court, held that proof that the defendant had confessed having executed the instrument, a promissory note, was sufficient without calling the subscribing witness.  The learned justice said he considered the confession of a party that he gave a note, or any instrument precisely identified, as high proof as that derived from a subscribing witness.

In the case of Homer *vs.* Wallis, 11 Mass. Rep., p. 308, where the objection was made that the hand writing of the subscribing witness ought to have been proved, before the plaintiff should have been permitted to resort to other evidence, Chief Justice Parker held that as the instrument in question, a promissory note, was good without a subscribing witness, the strictness contended for was unnecessary, however it might be in relation to deeds or instruments under seal, where something more is necessary to be proved than the mere signature of the party.

In the case of Henry *vs.* Bishop, the decision in the case of Hall *vs.* Phelps, was referred to with approbation by Chief Justice Savage, who stated that in New York the rule had been relaxed in its applica-

tion to negotiable paper, although still adhered to in regard to instruments under seal.

In the case of Fox vs. Reil, 3 Johnson, p. 477, decided the year following that of Hall vs. Phelps, it was argued that that case had gone the length of doing away with the rule requiring the production of the subscribing witness, even in the case of deeds. But Chief Justice Kent said that was not so, and held the rule in Hall vs. Phelps to be applicable to commercial paper only, which the court observed circulates with equal facility and credit, without the encumbrance of a subscribing witness. The learned Chief Justice remarked that "the rules of evidence might be more safely relaxed in the one case than in the other. The parties may go into an inquiry as to the consideration of a note, or other simple contract, but a deed precludes them from such an inquiry. A deed is an act of much higher force and solemnity in the law." He stated also that one reason why he had concurred in the decision of the court in Hall vs. Phelps, was a sense of the great inconvenience of the English rule, when applied to commercial paper.

Many other cases might be cited in which the like doctrine is recognized and adopted, showing that in New York, Massachusetts and several other States the relaxation of the rule as initiated, we believe, by Hall vs. Phelps, has become universal.

We have no statutory provision on the subject in this kingdom, nor has any rule been definitely laid down by judicial decision. In the case of Fell et als. vs. Parke, at the last July term of this court, the plaintiffs offered as evidence a power of attorney, purporting to have been executed in California, in the presence of two subscribing witnesses, residing there. Being called upon to prove the signatures of the witnesses, the plaintiffs failed to do so, and were non-suited. In that case the plaintiffs did not offer to prove the hand writing of the party executing the instrument, and the court was not called upon to decide whether or not that would have been admissible. The instrument to be proved in that case was not the basis of the suit, but only collateral proof, and had the plaintiffs been in a position to prove the signature of the party, it might have been difficult to show any good reason why that would not have been sufficient.

We are free to adopt such a rule on this subject as may seem best adapted to our circumstances, being unfettered by a course of previous decisions. In doing so we desire to adopt such a rule as will be found convenient in practice, conducive to the promotion of justice, and unembarrassed by merely technical considerations. The tendency in our day, both in England and in the United States, is to free the administration of justice from the fetters of mere technicality, and such has ever been the endeavor of this court. While we would deprecate too great a laxity in the adoption of rules for our guidance, wherever there is any danger of thereby encouraging fraud, we cannot see the necessity of imposing upon ourselves what we must regard as unnecessary strictness.

We think that the rule as established by the modern American decisions, to which we have referred, is a safe one. In all cases where the instrument in question is a negotiable note, the execution of which is attested by witnesses, who are without the jurisdiction of the court, we think it is sufficient for the plaintiff to prove the hand writing of

BB

the party, together with a distinct admission on his part that he owes the debt. In adopting this rule we believe we allow no greater a relaxation of the old rule than was laid down in the case of Hall *vs.* Phelps, decided nearly fifty years ago, in the Supreme Court of New York; and in the case of Coghlan *vs.* Williamson, cited above, decided by Lord Mansfield, in the Court of King's Bench, at an earlier date even than the former

It cannot be contended that if the appellees in this case had proved the signature of even but one of the subscribing witnesses to the note, the proof of its execution would not have then been complete, under the rule contended for by counsel for the appellant, and that too, perhaps, without proof of the hand writing of the party. Shall we hold then that proof of the hand writing of the witness is higher evidence, of the execution of an instrument, than proof of that of the party himself? We feel constrained to say that we should regard such a proposition as highly unreasonable. Had the appellees proved the hand writing of the subscribing witnesses, in addition of that of Swan, it would not in our opinion, have added one feather's weight to the evidence, as it now stands. Let it not be understood, however, that we think there is no propriety in the rule which requires the production of the subscribing witnesses, if within the jurisdiction. We think this ought to be required in order that all the light which can be had may be thrown on the circumstances attending the execution of the instrument. What we mean to say is this, that in the case before us, the mere proof of the hand writing of the witnesses, which is all that would be required to bring it within the strict rule contended for, would have cast no light whatever upon the circumstances under which the note was executed, and would therefore have been worthless in fact, although it would have satisfied the technical rule.

We are of opinion that the appellees have given sufficient evidence, in the absence of any proofs to the contrary, to satisfy the rule we have endeavored to deduce from the modern authorities, by having proved the hand writing of Swan beyond any reasonable doubt; and by the testimony given by Colburn as to what transpired in San Francisco at the time the note was executed, coupled with the explicit declarations of Swan to him in reference to the note and the debt, and his own knowledge of the state of the accounts at that time, between the firm of Swan & Clifford and the appellees.

It was argued that the appellees ought to have taken out a commission to examine the subscribing witnesses on interrogatories, which might have been crossed by the appellant. This might be a desirable mode of proceeding in many cases, but there is no rule here or elsewhere that we are aware of making such a proceeding imperative. If, however, the appellant expected to prove anything to his advantage, by the testimony of the subscribing witnesses, there was nothing to prevent him from having a comm.ssion issued for that purpose.

Of late years, courts have considered the objection arising from the absence of the subscribing witness, unaccompanied with any suggestions of fraud, as is the case in the present instance, (we mean on the part of the appellees) as entitled to much less regard than formerly; and in the case of Jackson *vs.* Burton, 11 Johnson, 64, Chief Justice Kent intimated that the rules and practice of the court left the subject with some latitude of discretion; while Professor Greenleaf says

distinctly that in such cases the instrument may always be read, upon proof of the hand writing of the party, accompanied with proof of his identity. (1 Greenleaf on Evid., Sec. 575.)

As to the other points raised by the learned counsel for the appellant, we do not consider that they offer any valid objection to the claim of the appellees upon the note. The note is presented as a claim against the estate of Swan & Clifford by the appellees, through their attorney, not as the endorsers or holders of the note deriving title through a third party, but as being themselves the original payees, and never having parted with their interest. We do not think therefore that they were bound to prove the endorsement of Grogan & Lent, made on the re-transfer of the note to their principals. It is in evidence that Grogan & Lent were the agents in the transaction of Loring Brothers & Co., and this is corroborated by the language of the endorsement, which declares it to be without recourse or any responsibility on the part of Grogan & Lent. This goes to show that they had neither interest nor responsibility in the matter. They could never, under any circumstances, be liable to pay the note, and therefore Swan & Clifford could never incur any liability of having to pay it to them.

It is contended that by the last indorsement Mr. A. P. Everett became the holder and legal owner of the note. But supposing Mr. Everett, instead of placing the note in the hands of the attorney of Loring Brothers & Co. here for collection, had returned it to them at Valparaiso, would they not have had a right to strike out that indorsement, as was done by their attorney at the trial. If Mr. Everett held the note for collection, for the real owners as was stated at the trial, he was not obliged to bring suit upon it in his own name, but might cause that to be done in the name of Loring Brothers & Co. We think that the counsel for the appellees argued rightly that the indorsements became no part of the record before the Commissioners, for the reason we have already stated, that the appellees claimed not as endorsees, but as the original payees of the note. The note now bears no indorsement but the blank indorsement of Loring Brother's & Co., and is therefore payable to any person in possession of it, with an apparent lawful right of ownership, such as their attorney had when he presented it. Payment to him and his delivering up the note will exonerate the makers. We think the attorney had a right to strike out the indorsements, even after the note was read in evidence, at the re-hearing on appeal, (see Chitty on Bills, p. 641,) although it would have appeared more regular to have done so before presenting it to the Commission. If Mr. Everett really have any interest in the note, the appellant had an opportunity to show it, when Mr. Everett was placed upon the stand as a witness in the cause.

It is to be hoped that proceedings before Commissioners in Bankruptcy will hereafter be marked by more order and regularity than they have hitherto exhibited. We cannot refrain from expressing our surprise that a claim of such magnitude, should have been considered proven upon the small amount of evidence which appears upon the meagre record sent up by the Commissioners. Had it rested before us upon no more satisfactory evidence than that, we should probably have felt it our duty to reverse the decision below.

The decision of the Commissioners is confirmed.

Mr. Blair for the appellant; Mr. Bates for the appellees.