JOHN H. FORD, RESPONDENT, *v.* RICHARD N. JOHNSTON
AND OTHERS, APPELLANTS.

*Fraudulent conveyance — husband and wife — Equitable claim by fraudulent grantee for money advanced.*

A conveyance made, pending an action of tort against the grantor, with intent to defeat the collection of any judgment that might be recovered against the grantor, is fraudulent and void.

J. and wife lived together on four different parcels of land. Towards the purchase-price of the first, $450, the wife handed to her husband, to be paid, and there was paid thereon, $150. The different pieces were successively sold, the husband, in some instances, giving his bond and mortgage to secure part of the purchase money, and the last parcel, at the end of twenty years, was and is worth $3,000, and this increase resulted from the payment, by the husband, of his bonds and mortgages given by him upon the purchase of the several parcels of land, and in buildings and other structures and improvements from time to time made by him. The titles to the several parcels of land were taken in the name of J., though the wife claimed that the same should have been taken in her name, and the husband had promised that it should be. After the cause of action in suit accrued, the last parcel was conveyed to the wife. *Held*, that between husband and wife and the husband and his creditors, the land was legally and equitably his property, subject to the equitable claim of the wife for her money used in the purchase of the property.

APPEAL from a judgment in favor of the plaintiff and against the defendants, entered upon the decision of a justice of this court at the Chautauqua county Special Term, in September, 1873.

The defendants Richard N. Johnston and Cordelia Johnston are husband and wife, and were married prior to 1847 and until that time possessed no real or personal property. In that year the wife received from the estate of her father a small amount of personal property, consisting of a horse, wagon and harness, valued at $100. This property was used for a short time by and in the business of the husband, and then sold by the husband for about $100. The father of the husband in said year, took twenty-five dollars of this money and purchased by contract in his name, thirty-five acres of land and paid upon the purchase-price the said twenty-five dollars; the balance of the $100 was used in the purchase of a cow and cook stove for the use of the family. The husband and wife went into possession of the land and resided there until the same was sold by the husband's father in 1849. No other payment was made by the father upon the contract, and upon the sale he realized $150. This sum the father declared to be the property of the wife and kept it for her, separate from his other property. In 1849 the husband and wife negotiated for another tract of land of twenty acres for $450. The father then paid to the wife the $150, which she delivered to her husband to be paid upon the land, and which was paid by him. He received a deed of the same, giving back a bond and mortgage for the payment of the balance of the purchase-money. At the time of the purchase it was arranged between the husband and wife that this piece of land should be and the same was, by an instrument in writing, declared a homestead under the laws of the State, and such writing was recorded as such. The husband occupied and improved this land, built thereon a house and barn, paid up the bond and mortgage, the said wife living with him at the time, managing and taking care of the family. In 1856 the twenty acres were sold and conveyed for $1,100; and in the winter of 1857 fifty acres of land was purchased for $2,100; and the moneys realized on the sale of the twenty acres, except $100, part thereof, was paid on the purchase. The $100 was invested in cows, which were put on this farm. When the deed for this farm was given, the question arose between the husband and wife as to who should take title. She claimed and insisted the property was her own, he claimed the title should be vested in him, that a

person in business could do nothing without a title to property. Without any arrangement made between them, the deed was given to the husband, vesting in him the title, and he gave back to the grantor a bond and mortgage upon the land as security for the balance of the purchase money. In 1863, the fifty acres was sold and conveyed, and about $1,600 realized on the sale and paid to the husband, who put the same into his wife's hands for safe-keeping, and she kept the same until March, 1864. In March, 1864, 100 acres of other lands were purchased, upon which was paid $1,500 of the $1,600 so left in the wife's hands, and a conveyance of the same was executed to the husband. This land was called the Barnes land, and no understanding was made that the same should be conveyed to the wife. The husband gave his bond and mortgage on the premises to secure the balance of the purchase-money. The 100 acres so purchased was sold in 1867, and about $2,700 in cash realized upon the sale, and in November of the same year, the land and premises described in the complaint, consisting of about fifty acres, were purchased of one Dean for $2,200.50. Upon this purchase the wife insisted of her husband that the deed should be given to her, and he promised her it should be. The deed, however, when executed by Dean and wife, was executed to the husband, and title was vested in him, and so remained until August 21, 1869, on which day the husband conveyed the same to his son, who, on the same day, conveyed the same to his own mother. The balance realized on the sale of the Barnes farm, being about $500, was, after the last conveyances were made, laid out and expended on the last named premises. Soon after the giving of the deed by Dean to Richard N. Johnston, his wife, learning that fact, demanded of her husband, and continued to demand that the title be vested in her, and the husband promised her it should be done. At the time when the deed was made by defendant Richard N. to his son, and from the son to the wife of Richard N., the same was made without any consideration then paid, and for the purpose of vesting the title in the wife in pursuance of his promise to her that it should be done as aforesaid. The plaintiff recovered a judgment against the defendant Richard N. on the 30th day of May, 1870, for $297.40 in this court, which was rendered for damages and costs in an action for an assault and battery, committed by the defendant

upon the plaintiff shortly prior to August 19, 1869, and about twelve days prior to the conveyance to said defendant Cordelia Johnston, aforesaid. On the thirtieth May, aforesaid, execution was issued upon said judgment to the sheriff of Chautauqua county, where said defendant resided, and where said judgment was docketed, and where said lands were situate, against the property of said Richard N., and the same was returned wholly unsatisfied, and the judgment is and was unpaid at the time of the bringing of this action, on the 14th April, 1873. The action was brought to set aside the said conveyance so made on the 31st day of August, 1869, and to obtain the judgment of the court declaring said judgment a lien upon said lands, and for such other relief as the court should deem proper to grant. Upon the trial of the action the facts as above stated were substantially found. The court also found that, at the time of the conveyance to Cordelia Johnston, she had a just and equitable claim against her husband's estate of $150, and interest from the spring of 1849, and for no greater amount, and that beyond the payment and discharge of such claim, the deed to her was without just consideration, and was voluntary, and was made by him with the view and for the purpose of hindering, delaying, cheating and defrauding the plaintiff in the collection of his cause of action against the said Richard N., then in suit and undetermined. That after the conveyance Richard N. had not sufficient means and property to pay his debts and demands against him then existing, and that the value of the said lands so deeded to said Cordelia, was about $3,000. That said Cordelia had all her married life lived with her husband, been industrious, worked hard and managed prudently to accumulate and increase the value of the property now represented in the lands in question, and that Richard N. and his wife now live upon and occupy the said premises. That the amount of the equitable claim of said Cordelia against the estate of her husband was $412.50.

As a conclusion of law, the court decided that the plaintiff was entitled to judgment declaring the deeds executed by Richard N. to his son, and from his son to said Cordelia, in fact voluntary and void, and executed by Richard N. to defraud the plaintiff; and that Richard N. and wife convey the lands described in the com

plaint to a referee to carry out the judgment, and that the referee sell the lands according to the rules and practice of the court, and out of the avails, after deducting his costs and charges, pay the defendant Cordelia, $412.50, and interest from September 12, 1873, and out of the balance, if any there be, pay the plaintiff his judgment and costs to be taxed, and the remainder, if any there be, to the defendant Cordelia Johnston, and that upon the sale either party to the action may become purchasers, and that a deed to the purchaser be executed by the referee, according to the usual practice.

Judgment was entered in pursuance of the decision of the court.

*Walter L. Sessions*, for the respondent.

*Morris & Russel*, for the appellants.

Noxon, J.:

The defendants in this case excepted generally to the conclusions of law found by the court. They also excepted to that part of the decision holding that Cordelia Johnston had a just and equitable claim against her husband's estate to the extent of $150, and interest from the spring of 1849, and that beyond the payment and discharge of said claim, the deed by the defendant Richard N. Johnston was without just consideration, and was voluntary and made with a view and for the purpose of defrauding the plaintiff in the collection of his cause of action. They also excepted to the decision holding that the equitable claim of said Cordelia against her husband's estate at the time of trial, amounted to $412.50. In the consideration of the questions involved in the case, we are led to consider first the situation of the plaintiff and his right to maintain the action to set aside the deeds for fraud. The plaintiff prosecuted the defendant Richard N. to recover damages in an action for assault and battery. The cause of action accrued, and suit was brought prior to the conveyance by Richard N. The judgment was recovered after the conveyance made by Richard N. to his son, and from the son to the defendant Cordelia. The plaintiff was, therefore, a subsequent creditor, and was bound within the authority of *Seward* v. *Jackson* (8 Cow., 437); *Dygert* v

*Remerschnider* (32 N. Y., 649), and many other leading cases, to show actual fraud, to entitle him to a decree setting aside the conveyance. The court did find as a question of fact, that in making the deed, whereby the title became ultimately vested in the wife, the husband made such conveyance with the intent of defrauding the plaintiff, and that the deed was without just consideration and voluntary, except as to an equitable claim which the wife had against her husband's estate to a small amount, for moneys belonging to her, and which with its accumulations of interest, constituted a part of the purchase-money of the lands in question, and in equity belonged to the wife. The deeds would not be set aside as to existing or subsequent creditors upon the ground they were voluntary and without consideration, because there was in part a consideration, and as to such part they were not voluntary; but when, as in this case it was made to appear that the property conveyed was of the value of $3,000, and that there was an interest in the property of over $2,500 belonging to the husband, and that the husband had no means or property to pay his debts and demands then existing against him, and that he had been sued by the plaintiff but a few days prior to conveying the property, that he had declared that he had got his property all right, that he had deeded it to his wife, and that plaintiff could not collect any thing of him, and that his wife never, in fact, paid but $150, I say when all this is made to appear in the evidence, and the fact is passed upon by the court declaring that the deeds were made with the actual intent to defraud this plaintiff of his claim, how can the transaction be upheld as otherwise than fraudulent and void? The conveyance was made pending an action of tort against the grantor with intent to defeat a recovery, and in such cases the conveyance has been held fraudulent and void. (*Jackson* v. *Myers*, 18 Johns., 425; *Wilcox* v. *Fitch*, 20 id., 472; *King* v. *Wilcox*, 11 Paige, 589.)

Another important question, involved in the case, relates to the rights of the husband and wife as between themselves. It is claimed by the appellant that the facts proved establish an equitable title to the premises in the wife; and that she was the owner of the premises prior to the execution of the deed to her; and that her husband had a mere naked title without any interest

in the premises; and that when she received the deed the legal and equitable titles were united, and that, therefore, at no time was the same liable for the husband's debts. The case of *Garrity* v. *Haynes* (53 Barb., 596), cited in support of this claim, hardly supports the position taken. In that case the wife purchased a farm and agreed to pay for it $1,600; she paid down, of her own money, $600; by *mistake* the deed was made to her husband. The balance of the purchase-money was secured by mortgage executed by the husband and wife. The husband never paid any part of the consideration for the farm. The deed bore date March, 1866; and, in November, 1866, the sheriff, by virtue of an execution against the husband, levied upon certain personal property on the farm. After the levy, and before the sale, the wife first learned of the mistake in the deed; and, after levy and before sale, the mistake in the deed was rectified by a conveyance from the husband to a third person, who conveyed to the wife; and these facts were allowed in evidence in an action by the wife against the sheriff for taking her personal property by virtue of the execution. This evidence was allowed, to show her title to the farm and the personalty so levied upon. The case seems to have very little, if any, bearing upon the question involved in this case. Here the wife's money, to the extent of $150, was paid by the husband on a purchase of a parcel of land conveyed to the husband in 1849; they both negotiated the purchase at the price of $450, and the husband executed back his mortgage to the grantor for $300, the balance of the purchase-money. It nowhere appears that this purchase was made for the wife, and it is of no importance that the premises were declared a homestead as provided by statute.

The premises were occupied and improved by the husband, upon which he built a small house and barn, and paid up the bond and mortgage, his wife living with him, managing and taking care of the family. They occupied the premises until 1856, and then sold the same for $1,100, and thereafter, sales and purchases were made on three several occasions, of other lands, until 1867, when the land described in the complaint was purchased. The conveyances on each occasion of purchase were made to the husband, who made part payment of the purchase-price from the avails of sales, and

gave his bond and mortgage to secure the balance. The only money belonging to the wife, which was ever invested in the land was the said amount of $150. That on one or more occasions the wife claimed she should have title, and the husband promised, on one or more occasions, to have the title vested in her, and she finally received a deed, in August, 1869, which deed was given in pursuance of the promise he had made her. Thus, during a period of about twenty years, Richard N. Johnston and his wife have lived together on four different parcels of land, the purchase-price of the first being $450, of which the separate property of the wife to the amount of $150, was handed by her to the husband to be paid and was paid on said first parcel, and the last parcel, at the end of twenty years, was and is worth $3,000, and this increase in property has resulted from the payment, by the husband, of his bonds and mortgages given by him upon the purchase of several parcels of land, and in buildings and other structures and improvements, from time to time, made by him thereon.

Upon every principle of equity and law, and the adjudication of the courts relating to transactions between husband and wife, the lands in question, as between the husband and wife and between the husband and his creditors, at the time the conveyances were made to place the title in the wife, were legally and equitably his property. It is true, as found by the court, that the wife had an equitable claim against the estate of her husband for her moneys used in the purchase of this property, and that claim had been carefully and equitably provided for in the decree, and she has no reason to complain, or grounds of appeal from the decision; nor has the husband cause to complain, that twenty years of his labor and services and moneys paid upon the lands he has bought and improved, has been by the decree of the court, charged, first, with the equitable claim of his wife, and second, with the legal claim of a creditor, for wrongs inflicted upon him, and third and last, in protecting the wife in the avails of the balance of the estate, which he voluntarily placed in her hands for her support and maintenance.

Upon the ground that the property in question was conveyed for the purpose of defrauding the plaintiff, and that the same was in part paid for by the moneys, labor and improvements of the husband, and partly with the wife's funds, the decree separating and

declaring the interest of the parties in the land, and a conveyance to a receiver, directing a sale and a distribution of the avails on principles of equity, should not be disturbed.

I think the judgment should be affirmed with costs.

MULLIN, P. J., and SMITH, J., concurred.

Judgment affirmed with costs.