fore, could have been recovered upon the bonds which were in the penalties of $200, so as to entitle the plaintiff to costs in the actions at law, according to the fee bill of 1840, the costs of both parties in the action upon a mere joining of the issue, could not, at the extent, have exceeded sixty or seventy dollars. And the amount of damages which the complainant was entitled to upon the bond, and the costs of both parties in the action on the bond, was all that constituted the amount in controversy. In any view of these cases, therefore, the vice-chancellor was bound to dismiss the bills ; and I think he was right in dismissing them with costs.

· The decrees appealed from must, therefore, be affirmed with costs.

*Jonathan King et al.* v. *John T. Wilcox et al.* J. W. GIL-BERT, for appellants ; N. GRIFFIN, for respondents.(*)

Upon the question whether the complainants in this case, whose debt against the defendants was contracted subsequent to the execution of the fraudulent deed of the premises by the latter, were entitled to a decree declaring such deed fraudulent and void, as to them as well as to those who were creditors previously, the chancellor observed :

" There appears to have been much conflict of opinion among the judges of different courts in England and in this country, whether all voluntary conveyances without a valuable consideration were not void, under the provisions of the statute 13th Elizabeth, chapter 5th, as to creditors whose debts existed at the time of the conveyance ; some holding that the existence of such indebtedness rendered the voluntary conveyance constructively fraudulent as to pre-existing debts, without reference to the amount of such debts or the value of the debtor's remaining property, and others holding that the existence of such debts was merely *prima facie* evidence of fraud, which might be rebutted by proof that there was in fact no intention to defraud. And those who held that the conveyance was absolutely void as to pre-existing debts, seeing the injustice of applying the same rigid rule of construing the statute in reference to debts subsequently con-

*Right of subsequent creditors to set aside a fraudulent deed.*

(*) Decided May 6, 1845. See ante., p. 11.

tracted, necessarily made a distinction between a conveyance actually fraudulent as to creditors, and one which was constructively fraudulent as to debts previously existing. This distinction is maintained by chancellor Kent in the case of *Reade* v. *Livingston*—(*3 John Ch. Rep.* 481—) who held a voluntary conveyance to be constructive and conclusive evidence of fraud in relation to pre-existing debts. Upon a full examination of all the cases, I think the law appears to be established, that where a conveyance is made and executed with an actual intent to defraud the existing creditors of the grantor, it is not a *bona fide* conveyance which can protect the grantee against the claims of subsequent creditors. This was clearly the opinion of chancellor Kent in the case just referred to. And Mr. justice Storey says, " where the conveyance is intentionally made to defraud creditors, it seems perfectly reasonable that it should be held void as to all subsequent as well as to all prior creditors, on account of ill faith." (1 *Stor. Eq.* 352, § 361 ; *see also* 1 *Dana's Rep.* 533, 2 *Pick. Rep.* 411, *Palm. Rep.* 415, 4 *Day's Rep.* 284, *Mason* v. *Rogers*, 1 *Root's Rep.* 324.) The vice-chancellor was therefore right in setting aside this conveyance as fraudulent in reference to the judgment of the complainants and the two notes which they signed as surety for Wilcox while he remained in possession of the premises, and exercised acts of ownership over the same.