Mr. Chief Justice ShaRKey
delivered the opinion of the court.
This case originated in the circuit court in a trial of the right of property, consisting of slaves, which had been levied on by the sheriff under an execution in favor of the defendants in error against Edmund Jenkins et al. The points presented for our determination, arise out of a motion for a new trial made by the claimant, against whom the jury had found a verdict, to the overruling of which a bill of exceptions was taken. A new trial was asked because the verdict was contrary to the evidence, — because the court permitted improper evidence to go to the jury, — and because the court erred in the instructions to the jury.
We cannot interfere with the verdict on the first ground. It seems that the same property had been sold by the marshal as the property of Jenkins. Stovall became the purchaser at that sale, but left the property in Jenkins’s possession for two years or more, and then it was found by the sheriff when he made this levy. This, was, at least, prima facie fraudulent as to creditors. To rebut this prima facie case, the claimant introduced Jenkins, the defendant in execution, and other witnesses were also introduced on both sides. The testimony is somewhat conflicting. The object was to prove the purchase of Stovall at the marshal’s sale to have been fraudulent, and, although Jenkins testified to its fairness, and claimed to have held possession of the slaves by a contract for hire, yet many of the other witnesses disclosed facts and circumstances strongly conducing to establish the fraud. It is perfectly obvious that the credibility of Jenkins was questioned by the jury. They had a better opportunity to decide that question than we have, and it was a question exclusively for their determination.
In the next place was improper evidence admitted 1 The objectionable evidence consists in declarations and statements *314 made by one Quarles, who was not sworn. It seems from, the testimony of Jenkins, that he had made an arrangement with Quarles to buy the negroes, and that he should be allowed to redeem them; Quarles, however, on the day of sale, declined to buy the negroes. Bullock, a witness who was present at the marshal’s sale, stated that he saw Quarles and Stovall together, and heard Quarles tell Stovall that he was afraid to purchase, but that he would bid off the property in the name of Stovall for Jenkins’s benefit. Stovall made no reply of assent or dissent, but afterwards bid off the property in his own name. Another witness went to the marshal’s sale to buy negroes, and made one bid against Stovall, when Quarles instantly came to him and requested him not to bid, as Stovall was buying the negroes for Jenkins. The witness did not know that Stovall heard the remark, though he was about four paces off, and the remark was made in the usual tone of conversation, and might have been heard at that distance. Another witness went to the sale for the purpose of buying a certain negro boy, but was requested by Quarles not to bid, as Stovall was buying the property for Jenkins’s benefit, in consequence of which he did not bid; he thought the negro worth $600, and would have given that sum. A similar request was made by Quarles to another witness. The property, it seems, sold for much less than its value. It is true, as a general rule, that mere hearsay is not to be admitted as evidence, but the rule is subject to many exceptions, some depending on necessity, and others depending on a privity of interest; and there is also another class in which the declarations or statements of third persons are admissible when they constitute the res gestee, which is clearly the case in this instance. An effort is made to establish fraud in the marshal’s sale. It bears one of the most conclusive badges of fraud, the permitting of the property to remain in possession of Jenkins. Quarles was instrumental in bringing about that result. By holding out that Stovall was purchasing for Jenkins’s benefit, he induced others not to bid. He was an accomplice in the design of Stovall and Jenkins, if it was fraudulent. His acts *315 constituted part of the res gestee. His exertions were made whilst the sale was going on, and in law and in design they were fraudulent as to other creditors of Jenkins. They constituted parts of the transaction, on which the rights of the execution creditors must turn. The statements of a person who has participated in an act, are not considered as mere hearsay, but as legitimate evidence of the act done. After a very careful examination of this question we think the authorities fully sustain us in holding that the evidence was properly admitted as part of the res gestee. Phelps v. Foot, 1 Conn. Rep. 387; Pool v. Bridges, 4 Pick. 378; Babb v. Clemson, 10 Serg. & Rawle, 419; Claylor v. Anthony, 6 Rand. 285; Willies v. Farley, 3 Carr. & Payne, 395.
But such testimony is admissible as the statement of a co-conspirator in a fraudulent design. Jenkins had first engaged Quarles to buy the property and allow him to redeem it. This he declined to do on the day of sale, but proposed to Stovall that he would buy in his (Stovall’s) name, and as a proof that there was a preconcerted plan, he prevented others from bidding, by assuring them that Stovall was bidding for Jenkins’s benefit. He made this statement to one witness in hearing of Stovall, or at least so near to him that he might have heard it, and most probably did. When the combination or conspiracy is established, the declarations of one are evidence against the others. 2 Cowen’s and Hill’s notes to Phillips, 177, Note 180.
We come then to the charges given by the court to the jury. The first was that if Stovall purchased the negroes “ in a manner to operate as a fraud upon the other creditors of Jenkins,” the negroes are still liable to the plaintiff’s execution. We cannot be precisely certain as to what idea was here intended to be conveyed. It must be very clear' that the purchase could not “operate” as a fraud unless it were fraudulent in fact, or in law. A purchase for an under value would not necessarily “operate” as a fraud, although other creditors might be the losers. The charge in substance amounts to nothing more than this, that if the purchase was fraudulent, it was void. *316 We can give it no other construction, although it seems possible that it was intended to have some other bearing.
The court also charged the jury that if there was an agreement between Jenkins, Quarles and Stovall to purchase the negroes for thebeneíb of Jenkins, and if, in carrying the agreement into effect, they induced persons not to bid, so that Jenkins might be benefited by the purchase, and that in consequence thereof the negroes did not bring by one-third their full value, Stovall acquired his title in a fraudulent manner, and if so acquired it is void as to other creditors of Jenkins. It cannot be questioned that a purchase under such circumstances is fraudulent as to creditors. Such an understanding as that mentioned in the charge, amounts to a combination to prejudice or defeat the just rights of creditors, and is consequently fraudulent as to them.
In the third place the court charged that if Stovall purchased with a meditated intent to defraud Jenkins’s creditors, he has no right to retain the negroes as a security for the money he may have paid. This, as a legal proposition is undoubtedly true. A fraudulent intent vitiates a purchase made in consummation of the design, as against creditors. We know of no rule which gives a lien under a fraudulent contract. Every one who engages in a fraudulent scheme forfeits all right to protection either at law or in equity. The law does not so far countenance, fraudulent contracts as to protect the perpetrator to the extent of his investment. This would be to hold out inducements to engage in schemes of fraud, as nothing could be lost by a failure to effectuate the entire plan. It would seem, from the testimony of Jenkins, that Stovall paid his own money for the negroes, and if so it is a hard case on him, but he is not entitled to relief. The jury, who were the proper judges of the matter, found that the contract of Stovall was fraudulent; if so it was void, and cannot constitute the foundation of a lien. To sanction such a lien would in effect carry out and sustain the design, as it would defeat the rights of creditors by postponing them until the lien was satisfied. This would be to give preference to a fraudulent creditor over an honest one.
The lqst charge given at the request of the plaintiff in execu *317 tion was that fraud may be imputed to the parties either by cooperation in the original design, or by constructive cooperation from notice of it, and from carrying the design into operation with such notice. There is no difference between those who formed the design and those who afterwards enter into it, with a knowledge of its character, and aid in carrying it out.
The charges which were asked for the claimant were in substance given. The court gave one with a qualification ; but the modification does not vary, in substance, the charge as it was asked. It might as well have been given in the words asked, as the court did-not change the sense.
It is worthy of remark on ,the whole case that there are other circumstances, besides those mentioned, which tend strongly to show that the verdict was not contrary to the evidence, but that the jury had at least strong circumstantial evidence to warrant their finding. For instance, it appears that Stovall declared after the sale that he had bought for Jenkins’s benefit. Another witness stated that if there had been no understanding that the property was to be purchased for Jenkins’s benefit, it would have sold for better prices, and that but for bids made by the marshal, it would have sold lower.
Let the judgment be affirmed,