CONRAD LOOS et al., Respondents, *v.* JOHN WILKINSON, Impleaded, etc., Appellant.

EDWARD P. BATES et al., Respondents, *v.* SAME, Appellant.

Where conveyances of real estate, made by a judgment-debtor, have been set aside as fraudulent in an action brought by the judgment-creditors and the grantee is called upon to account for the rents and profits, although adjudged to be a guilty participant in the fraud, he is entitled to be allowed on the accounting sums paid by him for taxes, interest on mortgages on the premises accruing while he occupied them, and repairs actually necessary for the preservation of the property and to keep the same tenantable, but he is not entitled to be allowed for insurance premiums paid by him, save so much as has been adopted by and has inured to the benefit of the judgment-creditors.

Such an accounting must .be on equitable principles, and when the fraudu-
lent grantor has been compelled to surrender the property and to account
for all the profits, he has, could or ought to have made, the ends of
justice have been obtained.

Where, in such a case, it appeared that the grantee paid interest on mortgages
long past due, at the rate of seven per cent, as called for by the mort-
gages. *Held*, he was entitled to be allowed only the legal rate of interest.

The property so fraudulently transferred was very large and valuable; it
was placed by the grantee in the hands of an agent who managed it and
collected the rents. *Held*, that the grantee was entitled to be allowed
the agent's commissions.

*Wood* v. *Hunt* (38 Barb. 302); *Thompson* v. *Bickford* (19 Minn. 17); *Allen*
v. *Berry* (50 Mo. 90) and other cases where a fraudulent grantee asks
affirmative relief, distinguished.

*Strake's Case* (1 Bland's Ch. 57) disapproved.

Reported below, 51 Hun, 74.

(Argued April 16, 1889; decided May 3, 1889.)

APPEAL by defendant, John Wilkinson, from order of the
General Term of the Supreme Court in the fourth judicial
department, made January 19, 1889, the nature of which is
hereinafter stated.

This action was commenced by plaintiffs, judgment-creditors
of J. Forman Wilkinson and Alfred Wilkinson, to set aside
certain conveyances of real estate situate in the city of Syra-
cuse, made by their debtors to John Wilkinson, on the ground
that they were executed by the grantors, and taken by the
grantee with intent to defraud the creditors of the grantors.
The action resulted in a judgment setting aside the convey-
ances, which judgment, upon appeal to the General Term and
to this court, was finally affirmed. (110 N. Y. 195.) John
Wilkinson had received the rents of the real estate from
December 9, 1884, to July 1, 1886, and by the judgment it
was adjudged that he should account for such rents and pay
them over to the receivers appointed in this action. It was
thereafter referred to a referee to take an account of the
rents, and he found that John Wilkinson was chargeable with
the amount of rents received, $42,466.34; that he should be
credited with the amount paid by him during the same period
for necessary repairs on the premises, $1,351.78; with the

Statement of case.

amount paid by him for city, county and state taxes on the premises while he occupied them, $9,257.59; with the interest paid by him on the mortgages upon the premises, which came due while he occupied the same, computing jt at six per cent, $7,973.86; with amount paid by him for insurance, $2,136.90; making a total credit of $20,720.13, and leaving due $21,746.21; upon which sum interest from the 1st day of July, 1886, to the date of his report was charged, amounting to $1,330.05.

The plaintiffs excepted to the report of the referee so far as it allowed any credits to John Wilkinson as an offset to or deduction from the gross amount of rents received by him. It appeared upon the hearing before the referee that the rents were collected by John Wilkinson, through an agent, who took charge of and managed the property, and he claimed to be allowed for the services of his agent the sum of five per cent upon the gross amount of rents, to wit, $2,123.31. This claim was disallowed by the referee, and to such disallowance John Wilkinson excepted. It also appeared that he paid upon the mortgages upon the real estate interest at the rate of seven per cent; and he claimed to be allowed the whole sum thus paid. The referee, however, only allowed interest paid upon the mortgages at the rate of six per cent, and John Wilkinson excepted to the disallowance of the one per cent. The report of the referee came on for confirmation at a Special Term and there it was in all things confirmed, except that a credit of $900 was allowed to John Wilkinson for the services of his agent in collecting the rents of the real estate. Both parties then appealed to the General Term, where the order of the Special Term, so far as it allowed any credits to John Wilkinson, was reversed, and all his credits were disallowed, and thus he was charged with the gross amount of rents received by him, to wit, $42,666.34.

*Louis Marshall* for appellant. The term "net rents and profits" means remaining after deducting necessary charges and outlay. (*Owston* v. *Ogle*, 13 East, 543; *Bennett* v. *Wor-*

*nack,* 3 C. & P. 96; *King* v. *Tomlinson,* 9 B. & C. 163; *St. John* v. *Erie R. Co.,* 22 Wall. 137; *Jones Mfg. Co.* v. *Comm.,* 69 Penn. St. 137; 5 Metc. 598.) Assuming that a fraudulent grantee is accountable for the rents and profits of the real estate conveyed to him in an action by creditors to reach such property and such rents and profits, still, the plaintiffs having come into a court of equity must also do equity, and can, therefore, only obtain the net rents and profits resulting after a deduction of the necessary expenditures made by the grantee. (2 Pomeroy's Eq. Jur. § 910; *Murray* v. *Gouverneur,* 2 Johns. Cas. 438; *Clute* v. *Emmerich,* 26 Hun, 10; *Robinson* v. *Stuart,* 10 N. Y. 189; *Ford* v. *Knapp,* 102 id. 135; *Harpending* v. *Munson,* 91 id. 650, 653; *Comstock* v. *Johnson,* 46 id. 615; *Collumb* v. *Read,* 24 id. 505, 515; *Coburn* v. *Morton,* 1 Abb. Ct. App. Dec. 385; *Wakeman* v. *Grover,* 4 Paige, 23; *Sullivan* v. *Miller,* 106 N. Y. 635, 643; *Ames* v. *Blunt,* 5 Paige, 13; *Barney* v. *Griffin,* 4 Sandf. Ch. 552; *Averill* v. *Loucks,* 6 Barb., 470; *Matter of Mitchell* v. *Tennant,* Genl. Term, 4th Dept., July, 1886.) The courts do not hold even a fraudulent grantee responsible for the value of the property transferred to him in fraud of creditors in cases in which it appears that the fraudulent grantee either returned the property to the fraudulent grantor or disposed of it in payment of valid and existing debts of the grantor, or placed incumbrances upon it for that purpose. (*Cramer* v. *Blood,* 57 Barb. 155; 48 N. Y., 684; *Murphy* v. *Briggs,* 89 id. 451; Bump on Fraud. Conveyances, 476; 1 Story's Eq. Jur. 434; *Ames* v. *Blunt,* 5 Paige, 14; *Wakeman* v. *Grover,* 4 id. 23.) The items paid for taxes and assessments preserved the property from the demands of the city and county, and the defendant has the right to be subrogated to their claims to the extent of such payment. (*King* v. *Wilcox* 11 Paige, 595; *Clute* v. *Emmerich,* 26 Hun, 10.) John Wilkinson was entitled to be subrogated to the rights of the mortgagees for the payments made by him upon the mortgages, and upon equitable principles is entitled to an allowance therefor. (*Robinson* v. *Stuart,* 10 N. Y. 190; *Clute* v.

*Emmerich*, 26 Hun, 10.) He is also entitled to an allowance for the moneys expended by him for repairs made by him upon the property. (*Jackson* v. *Ludeling*, 99 U. S. 513; *King* v. *Wilcox*, 11 Paige, 595; *Clute* v. *Emmerich*, 26 Hun, 10; *Holmes* v. *Davis*, 19 N. Y. 489.) He is also entitled to credit for the expenses incurred in collecting the rents and profits. (*The Tremolo Patent*, 23 Wall. 518; *Strong* v. *Skinner*, 4 Barb. 560.) The expenses of insurance also constitute an item which should be allowed. (*Murtha* v. *Curley*, 90 N. Y. 372; *Van Schaick* v. *N. F. Ins. Co.*, 68 id. 434.)

*Frank Hiscock* for respondents. One who has received the rents and profits of land, not being entitled to them, as against a judgment-creditor, having an equitable right to the property for the satisfaction of his debt, and to the rents and profits, that they may be so applied is chargeable in accounting for the rents and profits, with interest. (*Cowing* v. *Howard*, 46 Barb. 579; *Taylor* v. *Taylor*, 43 N. Y. 584; *Jackson* v. *Wood*, 24 Wend. 443.) A deed fraudulent in fact will be declared absolutely void and not permitted to stand as security for any reimbursement or indemnity. (*Boyd* v. *Dunlap*, 1 Johns. Ch. 478–482; *Briggs* v. *Merrill*, 58 Barb. 389; *Stoville* v. *F. and M. Bk.*, 16 Miss. 316; *Sands* v. *Codwise*, 4 Johns. 598, 599; Wait on Fraud. Con. 264; Bump on Fraud. Con. 613, 614; *Railroad Co.* v. *Soutter*, 13 Wall. 523; *Bean* v. *Smith*, 2 Mason, 296–298; *Wood* v. *Hunt*, 38 Barb. 302, 309; *Boland* v. *Walker*, 7 Ala. 280; Kerr on Fraud and Mistake, 200; *Union Bk.* v. *Walker*, 12 Hun, 308.) The fraudulent vendee is not entitled to be credited on this accounting with the amount paid for interest upon the mortgages on the Globe Hotel property. (Bump. on Fraud. Con. [3d ed.] 614; *In re Mead*, 19 Bankruptcy Reg. 81; *Thompson* v. *Bickford*, 19 Minn. 18; *Boyd* v. *Dunlop*, 1 Johns. Ch. 478; *Van Wyck* v. *Baker*, 16 Hun, 168; *Davis* v. *Leopold*, 87 N. Y. 620–622; *Lore* v. *Diekes*, 16 Abb. N. C. 47–52; *Seivers* v. *Dickover*, 111 Ind. 497; *Bennett* v. *Bates*, 94 N. Y. 373.) So far as

the plaintiffs are concerned, the payment of the taxes, as well as the interest, was voluntary, and payments voluntarily made cannot be recovered. (*Sexton* v. *Pepper*, 28 Hun, 31; *N. Y. & H. R. R. Co.* v. *Marsh*, 12 N. Y. 308; *Mayer* v. *Mayor, etc.*, 63 id. 455.) The plaintiffs could not possibly have benefited by the insurance, and, therefore, will not be charged with the burden of it. (Bump on Fraud. Con. 610; *Le Row* v. *Wilmarth*, 91 Mass. 382; *Bernheimer* v. *Beer*, 56 Miss. 149; *Carpenter* v. *P. W. Ins. Co.*, 16 Pet. 495; *Nipper's Appeal*, 75 Penn. 478.) If another person has an interest in the property he may insure for himself; nor can he set up a claim to money which has become due to another, unless that other be his debtor, and the money is garnished or attached. (*Carpenter* v. *P. W. Ins. Co.*, 16 Pet. 495; *Nipper's Appeal*, 75 Penn. St 478, 479.)

Earl, J. Upon the trial of this action it was adjudged that the deed from J. Forman and Alfred Wilkinson to John Wilkinson was executed and delivered by them and received by him with intent on the part of each of them to hinder, delay, cheat and defraud the plaintiffs and other creditors of the grantors, and that it was, therefore, fraudulent and void and should be set aside. It was held at the General Term, by the decision now under review, that, because the grantee, John Wilkinson, was an active and guilty participant in the fraud, he was entitled to no deduction from the gross amount of rents received by him on account of money paid by him either for taxes, interest, repairs, insurance or the expenses of collecting the rents. This conclusion was reached by the application of the general rule that a fraudulent grantee thus situated is entitled to no protection, aid or assistance from a court of equity. A general statement of the rule is found in *Sands* v. *Codwise* (4 Johns. 537), in the language of Chief Justice Kent, as follows: " A fraudulent conveyance is no conveyance as against the interest intended to be defrauded. This is the plain language and intelligent sense of the rule of the common law. It is impossible that these deeds can be permitted to

stand as a security if they are to be adjudged void *ab initio.* If they have no lawful existence, it would be inconsistent and absurd to recognize them for any lawful purpose. I presume there is no instance to be met with of any reimbursement or indemnity afforded by a court of chancery to a *particeps criminis* in a case of positive fraud. In *Smith* v. *Loader* (Prec. in Chan. 80), the party advancing money to an agent under a combination with him to cheat the principal, lost his whole security from the principal for the money actually advanced to his agent. It is fit and proper that this result should take place, as a contrary course might afford countenance to fraud by giving it a partial effect. It would not become a court of equity to take a single step to save harmless a party detected in a fraudulent combination to cheat." In *Boyd* v. *Dunlap* (1 Johns. Ch. 479) the same learned jurist said : "A deed fraudulent in fact is absolutely void, and is not permitted to stand as security for any purpose of reimbursement or indemnity." In *Lobstein* v. *Lehn* (120 Ill. 549) it was held that a deed, fraudulent in fact, is absolutely void as against creditors of the grantor, and will not be permitted to stand as a security for any purpose of reimbursement or indemnity, but that it is otherwise with a deed which is only constructively fraudulent; that, in the latter case, the grantee may hold the same as a security for a debt honestly due him.

The following cases are particularly relied upon to sustain the conclusion of the General Term : *Bean* v. *Smith* (2 Mason, 252); *Railroad Co.* v. *Soutter* (13 Wall. 517); *Borland* v. *Walker* (7 Ala. 269); *Thompson* v. *Bickford* (19 Minn. 17); *Allen* v. *Berry* (50 Mo. 90); *Seivers* v. *Dickover* (101 Ind. 495); *Stovall* v. *Farmers and Merchants' Bank* (16 Miss. 305); *Kenney* v. *Brown* (3 Ridg. P. C. 462); *Backhouse's Administrator* v. *Jett* (1 Brock. 500); *Blow* v. *Maynard — Lawrence* v. *Blow* (2 Leigh [Va.] 29); *Peters* v. *Smith* (4 Rich. Eq. [S. C.] 197); *Mosely* v. *Miller* (13 Bush, 408); *Van Horn* v. *Fonda* (5 Johns. Ch. 388); *King* v. *Wilcox* (11 Paige, 589); *Lore* v. *Dierkes* (16 Abb. N. C. 47); *Union National*

*Bank* v. *Warner* (12 Hun, 306); *Wood* v. *Hunt* (38 Barb. 302); *Davis* v. *Leopold* (87 N. Y. 620).

We have carefully examined these authorities and they furnish very little, if any, countenance for the contention of the plaintiffs. They are all cases where the fraudulent grantee was asking for the active interference of some court for his protection, or for his reimbursement for improvements, for moneys paid in pursuance of the fraudulent arrangement with his grantor, or to discharge incumbrances, or to secure to him the payment of a debt due to him from the fraudulent grantor, or where he was compelled to account for profits which he had actually made, or could have made, out of the property fraudulently conveyed; and the equitable rule was enforced that "he who hath committed iniquity shall not have equity," which is merely another way for saying "that one who comes into a court of equity, seeking its aid, must come with clean hands." But in none of them was the question really involved or discussed, with which we are now dealing, with the possible exception of three cases, to which we now call attention.

In *Wood* v. *Hunt* evidence was given that the fraudulent grantee of land, subsequently to the grant, paid certain debts of the grantor and purchased certain obligations against him, and it was held that the grantee, by such evidence alone, did not present a case which entitled him to demand, as a condition to the granting of relief to the creditors of the grantor by adjudging the grant void and directing a sale of the premises, and the satisfaction of a judgment-creditor from the proceeds of the sale, that any provision should be made for his indemnity for sums which he had thus voluntarily paid. The complicity of the grantee in the fraud of the grantor deprived him of any right to relief, in respect to such payments, from a court of equity. In that case the fraudulent grantee was seeking the protection of the court for payments to creditors of the grantor, and to the grantor himself. It is true that, in a certain contingency, he was ordered to account for rents and profits. But there was no adjudication as to the principles upon which such an accounting should be had, and

no holding that, upon such an accounting, a fraudulent grantee should be bound to account for the gross rents and profits received without any allowance for taxes or repairs.

In *Thompson* v. *Bickford* the court said: "In equity a conveyance set aside as constructively fraudulent is upheld in favor of one not guilty of actual fraud to the extent of the actual consideration, and is vacated only as to the excess. But if there be actual fraud, there is no difference between law and equity. The conveyance is considered as void *ab initio*, and set aside entirely and cannot stand as security to the fraudulent grantee. It is the same thing as if no deed had ever been executed." In the head note it is stated that the rents and profits and the proceeds of the parcel of land sold were liable to the same extent as the land, and that the grantee was accountable for them to the grantor's creditors, without deduction for his demands, or for the money paid for taxes, or to extinguish liens or incumbrances placed thereon by the grantor. The facts as to the payment of the taxes do not appear. There is no discussion as to them in the opinion, and it does not appear clearly from the opinion that the court held that the fraudulent grantee could not have a deduction from the rents on account of taxes paid by him. So far as it was held that the fraudulent grantee could not claim reimbursement for the liens or incumbrances paid, or that he could not have satisfaction of the indebtedness from the fraudulent grantor to him, it was simply an enforcement of the general rule in harmony with all the other cases. The main contention there was as to the indebtedness of the fraudulent grantor to the fraudulent grantee; and it does not appear that the fradulent grantee was required to account for the gross rents.

In *Allen* v. *Berry* it was held that where a creditor purchases the lands of his debtor at a sale under execution, and brings suit against the debtor and a third party to set aside, as fraudulent, a conveyance of the land from the former to the latter, no principle of equity will permit the fraudulent grantee to offset, against the value of the property the amount he may have paid for it; that fraud renders the deed absolutely

void as to creditors, and the plaintiff is entitled to recover the property and its rents, etc., as though no such fraudulent deed ever had been made. In that case Jones, the fraudulent grantee, put improvements upon the house fraudulently conveyed to him to the amount of about $1,200 and he occupied it himself, and it was proven that the rents and profits were worth $100 per annum, and he was ordered to pay the plaintiff $400 for four years rent. It does not appear that the improvements made upon the house were necessary for its preservation or to make it suitable for occupation. The costs of the improvements were not actually disallowed. The property was sold under a mortgage foreclosure and there was a surplus of $1,700 which came into the hands of Jones, and this statement is contained in the opinion: " The decree does not refer to the improvements by Jones on the Hamilton house, nor does it charge him with the overplus money he received at the sale under the county mortgage, which, with other moneys collected by him, was more than the amount of the alleged improvements." It, therefore, appears in that case that the fraudulent grantee was allowed to retain more money than the amount of the improvements made by him upon the house. These cases, therefore, have little or no bearing upon the present discussion.

The only authority we have been able to find squarely upholding the plaintiff's contention is *Strake's Case* (1 Bland's Ch. R. 57). In that case Strike was the fraudulent grantee of property subject to a ground rent, and he was compelled to account for the full value of the rents and profits of the property, rejecting entirely his claim for his advances in payment of taxes, ground rent and an assessment for a street extension. While the rule as to the responsibility of fraudulent grantees was there very accurately stated and properly applied by the chancellor of Maryland, so far, however, as it was decided that the fraudulent grantee should be made to account for rents and profits without any allowance for taxes, assessments and ground rents paid by him, it is, we believe unsupported by any

authority, and stands without a fellow in this country or in England.

There is not a hint in any authority in this state sustaining the contention of the plaintiffs. But here and elsewhere there are some authorities which sustain the claim of the appellant as to some of the items at least which were disallowed at the General Term. In Bump on Fraudulent Conveyances (575), it is said: "When the transfer is tainted with actual fraud, no allowance can be made for improvements. It would seem, however, to be just and reasonable to allow expenditures as an offset to rents and profits, especially when they have been made to pay taxes." In *Jackson* v. *Ludeling* (99 U. S. 513) the case arose under the civil law as administered in Louisiana, and cannot, therefore, be an authority in this case. But Mr. Justice Bradley, delivering the opinion in that case, said: "But as the vice of their title consisted in their own inequitable acts and proceedings, we think that they are to be regarded, in the language of the civil law, as possessors in bad faith. The common law allows nothing to the possessor in good or bad faith for expenditures made upon land from which he is evicted by superior title; but equity, in cases within its jurisdiction, allows the possessor in good faith for repairs and improvements, but where the possessor (being a trustee) has been guilty of actual fraud, it makes him no allowance for improvements, but allows him compensation for necessary repairs." In *Sands* v. *Codwise*, while the general rule as to the situation and responsibilities of fraudulent grantees is accurately and fully stated by Chief Justice Kent, and the fraudulent grantees there were ordered to account for the rents and profits of the lands conveyed to them, it was ordered (p. 605) that, in taking such accounts, allowances should be made for taxes, repairs and improvements permanently useful, and that only the balance of the rents and profits should be paid to the assignee of the estate of the fraudulent grantor; and that case seems to be a precise authority for the allowance in this case of the sums paid by John Wilkinson for taxes and repairs.

In *Van Horn* v. *Fonda*, the defendant was held to be a fraudulent purchaser of what was called the Caughnawaga farm, and it was decreed that he should convey the same to the plaintiffs free from all incumbrances. The learned counsel for the plaintiffs, Mr. Henry, admitted that while the defendant should be charged with the rents and profits of the farm he should be credited with actual expenditures for repairs. Chancellor KENT held that the defendant ought to be charged with the rents and profits, and credited "with expenditures for actual repairs." He said further: "Nor do I think that the defendant ought to be allowed, under the circumstances of this case, for what might otherwise be deemed beneficial improvements made by him on the Caughnawaga farm. He entered in his own wrong, and held under a claim of title procured by fraud, and he is not entitled beyond the amount of his actual expenditures. Everything beyond that was gratuitous. A fraudulent possessor is never allowed for beneficial improvements."

In *King* v. *Wilcox* (11 Paige Ch. 589), the owner of a lot, with a house thereon, which was subject to two mortgages, conveyed it absolutely to his brother-in-law for the purpose of defrauding his creditors, and the grantee subsequently went into possession and received the rents and profits and made some improvements thereon, and subsequently paid and took an assignment of the mortgages, and it was held that a subsequent creditor of the fraudulent grantor had a right to file a bill to set aside the fraudulent conveyance, and to have the proceeds of the property applied to the payment of his debt, after paying the amount due upon the mortgages, and the value of the improvements made by the fraudulent grantee upon the premises. It was also held that in taking an account of the rents and profits of the premises received by the fraudulent grantee, to be offset against the amount due to him upon the mortgages, he should not be charged with that part of the rents and profits which had arisen exclusively from his own improvements. The chancellor said: "So far as respects

the mortgages held by the fraudulent grantee, the rents and profits are, unquestionably, an equitable offset, after deducting for taxes and assessments, except such part of the rents and profits as have arisen exclusively from improvements made by Sawyer, the fraudulent grantee." It is true that there the fraudulent grantee, after he had taken an assignment of the mortgages, was, in some sense, a mortgagee in possession. Yet he had taken the conveyance and gone into possession for the purpose of defrauding the creditors of the grantor, and it is not perceived how, while he was thus in possession, he could better his condition by taking an assignment of valid mortgages for the purpose of still further effectually carrying out the fraudulent scheme. He was still a fraudulent grantee in possession and bound to account for the rents and profits upon the same principles which would be applicable to any other fraudulent grantee; and yet it was held that he was entitled to deductions on account of taxes, assessments and improvements.

A further reference to the authorities is not needful. We think the weight of authority is where we might expect to find it, in favor of the allowance of, at least, some of the claims of John Wilkinson which were disallowed at the General Term. It is the general rule, even in actions to recover damages for pure torts, that the plaintiff shall recover compensation for such damages only as he has actually suffered; and such is the invariable rule in all cases except where, by the settled rules of law, punitive damages may be awarded, and in such cases courts are constantly striving to come nearer to the rule of compensation, leaving the wrong-doer to the criminal courts for punishment. In actions of ejectment, even against persons occupying land without a shadow of right, the plaintiff can recover as mesne profits only the rental value as in an action for use and occupation, and such value is not based upon gross rents, but upon net rents after allowance for necessary repairs, taxes and other fixed charges. (*Murray* v. *Governeur,* 2 Johns. Cas. 438; *Holmes* v. *Davis,* 19 N. Y. 488.)

The wrongful infringer of a patent is not required to pay to the patentee the gross profits he has made, but only the net profits. (*The Tremolo Patent*, 23 Wall. 518; *Burdell* v. *Denig*, 2 Otto, 716).

It is true that a fraudulent grant to a grantee who is a guilty participant in the fraud, must as to the creditors of the grantor be treated as void *ab initio*. But the only way the creditors can reach the rents and profits received by the grantee is by an accounting in equity. And what does such an accounting mean? Does it mean that he shall pay for more rent than he has received or could have received, for more profits than he has made or could have made? Shall he account to the creditors for more rents than they could have received if they had had possession of the real estate? If the grant be of a waste piece of land which the grantee has improved so as to make rent possible, shall he account for gross rents without any allowance for his improvements? If the fraudulent conveyance be of a vessel, unseaworthy, and the vendee makes her, by repairs, seaworthy, and then charters her, shall he be required to account for the gross charter-money? Or, in the cases above cited, where the fraudulent vendee of slaves was compelled to account for their hire, would an allowance for their maintenance while they were working for hire have been denied? To answer these queries in the affirmative would, even in a court of equity, be a wide departure from the rule of compensation. It would be spoliation, not justice or equity. A court of equity does not sit for the punishment of criminals. If a fraudulent grantee has violated the criminal law, he may be prosecuted and punished in the criminal courts. While such a grantee will not be allowed for permanent improvements made upon the granted property to suit his fancy or simply to promote his supposed interests, when the creditors of the grantor come into a court of equity seeking to compel him to account for rents and profits, the accounting must be upon equitable principles; and when he has been compelled to surrender the property conveyed to him, and to account for all the

profits he has made, or could have made, or ought to have made therefrom, the ends of justice have been completely and exactly attained.

Now, looking first at the taxes paid by John Wilkinson, they were imposed by supreme authority for the benefit of the public and were inevitable. If the creditors had taken the property at the time John Wilkinson took it, they would have been obliged to pay them. By the payment he did them no wrong and caused them no prejudice. Why should he not be allowed them? Upon what principle of equity or upon what ground of reason or public policy or justice can he be compelled to allow for the gross rents without any deduction whatever for the taxes which he was obliged to pay?

In reference to the repairs it was found that " they were necessary for the preservation of the property and to keep the same tenantable." The expenses for them were not made in pursuance of or to carry out the fraudulent scheme or to gratify the caprice of John Wilkinson; but they were necessary to preserve this very property for the creditors, and to make the rents for which he is accountable. Why, then, should he not be allowed for such expenses? No harm or prejudice is caused the creditors by such allowance. The repairs, as it turned out, were really made for their benefit.

As to the interest upon the mortgages, there was no dispute that the mortgages were valid liens upon the property; the interest had to be paid. If the creditors had taken the property, they would have been obliged to pay it. The payment was one made for their benefit and in their interest. It had no connection whatever with the fraudulent scheme, and it is impossible to perceive upon what principles of justice or equity an allowance for such a payment could be refused.

The case would be different if John Wilkinson were so situated that he was obliged to come into a court of equity and ask for affirmative relief that these claims be enforced against the property or paid out of it. Then the court might leave him entangled in the toil which he himself had woven — the victim of his own fraudulent acts. But he asks nothing. He is on the

defensive. He is bound to account for the rents, but claims that these sums have been expended out of them and that he has only the balance for which he is accountable. The court could have compelled him to account either for the rental value of the property or for the rents actually received; and if he had been compelled to account for the rental value, it would have been that value, with the interest, taxes and repairs considered upon the question of the value; and the plaintiffs should not be in a better position when, instead of taking the rental value, which is really all they have lost, they take what he has actually received for rents, which must mean what he has received after the necessary deductions.

We are not quite so clear that an allowance ought to be made for the expense of collecting the rents. If John Wilkinson had done the work of collecting the rents personally, no allowance for that work could be made. But the property, from which the rents came, was very large and valuable, and it was placed by him in the hands of an agent who managed it and collected the rents, and we think that an allowance for commissions, which is an ordinary allowance in such cases, is proper. The rents came to him reduced by the amount of this charge, and in estimating the rental value of real estate, a charge of this kind would generally be considered.

But the claim for insurance rests upon different principles. That, in no way, as it turned out, benefited any one. It was not an insurance for the benefit of the creditors, but solely for the benefit of John Wilkinson; and if the property had burned down, they could not have enforced it in their favor. In that event no one could have collected the insurance excepting John Wilkinson, and he might have failed; and even if he had succeeded in getting the insurance money, it is not certain that these creditors would have been entitled to it or able to reach it. (*Nipps' Appeal*, 75 Pa., 472; *Carpenter* v. *Providence and Washington Ins. Co.*, 16 Peters, 495; *Leroy* v. *Wilmott*, 9 Allen, 382.)

The finding of the referee in reference to the insurance is as follows: " That between the 9th day of December, 1884,

and the 1st day of June, 1886, Mr. Chamberlain also paid for
insurance upon the Globe Hotel property and the residences of
J. Forman and Alfred Wilkinson, conveyed to John Wilkinson,
the sum of $2,136.91; that, by the terms of a portion of said
policies, the loss, if any, which would occur, was first made
payable to J. Forman and Alfred Wilkinson as executors of
the last will and testament of John Wilkinson, the interest
so sought to be protected being the mortgaged interests above
described; that prior to the expiration of a portion of said
policies, to wit, on the 7th day of October, 1886, with the
consent of the insurers, a provision was inserted in the
respective policies then in force providing that said policies
insured John Wilkinson, J. Forman Wilkinson and the estate
of Alfred Wilkinson, Charles E. Hubbell and Albert K.
Hiscock, as receivers under certain judgments of J. Forman
and Alfred Wilkinson, and Charles E. Hubbell, as assignee of
said Wilkinsons, as their respective interests may be determ-
ined; that the premiums on all of said policies were paid by
Mr. Chamberlain." It is impossible to perceive how any
allowance could be made to John Wilkinson for the expense
of insurance procured for the benefit of the mortgagees. But
it appears that on the 7th day of October, 1886, by consent
of the insurers, a provision was inserted in the policies, then in
force, providing that they should insure John Wilkinson,
J. Forman Wilkinson, and the estate of Alfred Wilkinson,
Charles E. Hubbell and Albert K. Hiscock, as receivers
appointed in this action; and so far as the receivers them-
selves adopted the insurance, and thus secured its protection,
it is proper that they should bear the expense thereof. But
how much of the expense they should equitably bear was not
shown, and cannot be ascertained from this record. It is
possible that some apportionment of the expense of insurance
ought to be made and can be made, and if that be so, a further
reference may be ordered, in the discretion of the Supreme
Court, to ascertain the amount; but no allowance can now be
made for it.

It is claimed, on behalf of John Wilkinson, that he should

have been allowed his full claim for commissions paid his agent for collecting the rents, as found by the referee, to wit, $2,123.31, and that the Special Term erred in allowing him only $900 for that item. All the evidence was before the judge at the Special Term, and we cannot say that he erred in his estimate of the value of the services and the amount to be allowed as compensation therefor.

John Wilkinson actually paid upon the mortgages, which were liens upon the property, interest at the rate of seven per cent; but the referee and the Special Term credited him with interest at the rate of six per cent only. In this, we think, there was no error. The mortgages had been long past due, and six per cent only could be demanded by the mortgagees. He could not claim credit for an over-payment. So far as the one per cent is concerned the creditors derived no benefit whatever therefrom. (*Bennett* v. *Bates*, 94 N. Y. 373.)

Our conclusion, therefore, is that the order of the General Term should be reversed and the order of the Special Term modified by striking out the credit of $2,136.90 for insurance; and as thus modified it should be affirmed, without costs to either party, upon appeal to the General Term and to this court.

Ruger, Ch. J., Andrews and Peckham, JJ., concur; Danforth, Finch and Gray, JJ., concur as to all except the item of $900 for expenses of collecting rent.

Judgment accordingly.