(34 Misc. Rep. 241.)

## BOSHART v. KIRLEY et al.

(Supreme Court, Special Term, Lewis County. March, 1901.)

1. CHATTEL MORTGAGE—DEATH OF MORTGAGOR—SUIT TO SET ASIDE.

Where a chattel mortgagee permits the mortgagor to retain possession of a stock of goods in a store for 15 months, and apply the proceeds of sales in his business, and the mortgage is not filed, and the mortgagor dies insolvent, his creditor, having a claim of more than $100, may bring an action to have the mortgage declared void as to creditors, under Laws 1897, c. 417, § 7, providing that a creditor of a deceased insolvent debtor may, without judgment on such claim, for the benefit of himself and other creditors, maintain an action to set aside any act of the debtor in fraud of creditors.

2. SAME—RIGHTS OF MORTGAGEE.

Where a chattel mortgagee of a deceased fraudulent mortgagor incurred expense in taking care of the property, he will be allowed compensation therefor on a judgment in favor of a creditor of the insolvent in an action to set aside the mortgage.

Action by Frank E. Boshart, for himself and other creditors of F. Peter Kirley, deceased, against Edward G. Kirley and others, under the personal property law, to attack as fraudulent a chattel mortgage executed by the decedent to one of the defendants.

E. J. Boshart and C. S. Mereness, for plaintiff.

F. C. Schraub, for defendants Kirley and others, as administrators, etc.

Ryel & Merrill, for defendant Easton.

HISCOCK, J. This action is brought under section 7, chapter 417, Laws 1897, which provides that:

"A creditor of a deceased insolvent debtor, having a claim against the estate of such debtor, exceeding in amount the sum of one hundred dollars, may, without obtaining a judgment on such claim * * * for the benefit of himself and other creditors interested in said estate, disaffirm, treat as void and resist any act done or conveyance, transfer or agreement made in

fraud of creditors or maintain an action to set aside such act, conveyance, transfer or agreement."

The transfer which plaintiff attacks as fraudulent is a certain chattel mortgage executed on or about November 14, 1898, by the deceased, F. Peter Kirley, to the defendant Easton. The plaintiff is the owner and holder of notes aggregating several hundred dollars made and delivered by said Kirley to him before the date of the chattel mortgage, and the validity of and amount due upon which were undisputed upon the trial. It was alleged in the complaint, and undisputed either by the answers of the various defendants or by any evidence or objection upon the trial, that said Kirley at the time of his decease, in February, 1900, was insolvent. In addition to the right directly conferred upon him by the statute above quoted, to bring this action, plaintiff served upon the defendant administrators notice to take proceedings against said chattel mortgage, which they failed to do, and under which notice and default plaintiff also claims the right to maintain this action, joining such administrators as defendants. Plaintiff, in his complaint, alleged that said chattel mortgage was void because of failure to file the same, and also because of failure to make any change in the possession of the mortgaged property after the same was given; but upon the trial his right to succeed became limited to the establishment by him of the proposition and complaint that after said chattel mortgage was given, by and with the consent of the mortgagee, the mortgagor remained in possession of the mortgaged property, dealing with it and selling from it for his own benefit the same as before the mortgage was given,—the proceeds of such sales being used for his own benefit and in the conduct of his business, and not being applied at all to the payment of the alleged mortgage debt.

I shall review the evidence given upon the trial as bearing upon the question whether this proposition of plaintiff's was fairly established. There was little dispute about the facts. The mortgagor, Kirley, had a clothing and men's furnishing store in the village of Lowville, and a tailor shop in connection therewith. Therein he had a stock suitable to his business of clothing, cloths, hats, caps, gloves, mittens, men's furnishing goods, etc.; being, as recited in the chattel mortgage taken by defendant Easton, "the usual assortment of a clothing, tailoring, hat and cap, and gents' furnishing store." Upon all of this stock and all of these goods and all fixtures, tools, implements, machines, appliances, etc., contained in the store, the chattel mortgage in question was upon the 14th day of November, 1898, made and executed by him to the defendant Easton. Said mortgage recited that Kirley was indebted unto Easton in the sum of $5,000, being for money that day loaned; and it expressed that it was given to secure "the payment of said debt and the interest thereon, and also any future advances, and as security for any obligations which said Easton might guaranty or become liable on for said Kirley." As a matter of fact, the mortgagor did not owe the mortgagee a dollar at the time said mortgage was executed, but from a date a few days after the execution of the mortgage down to the time of the mortgagor's death, February 6, 1900, Mr. Easton claims that he made loans to Kirley, or

became liable for advances made by the Black River National Bank, of which he was cashier, to Kirley, through his direction, amounting in all to the sum of $4,080.40. The chattel mortgage was not filed or made public in any manner until the time of Kirley's death. There was no change in the possession or management of the store and its contents after the mortgage was executed, but Mr. Kirley remained in possession down to the time of his death, transacting business as usual. During the period intervening the execution of the mortgage and his death, a large quantity of new goods was purchased and put into the store, and mingled with the old goods there at the time the mortgage was executed. Sales were made in the ordinary course of business from both the old and the new goods, no separate account being kept, so far as appears, of the respective proceeds of such old and new goods. There were three or four clerks in the store, and it affirmatively and explicitly appears that some of them, at least, drew their wages from week to week out of the money drawer in the store. The defendant Easton, as above stated, was the cashier of the Black River National Bank, at which bank, during all of this period, Kirley kept an account. The advances claimed to have been made to him under this chattel mortgage were passed to his credit in that account; and the proceeds of such advances apparently were all used in conducting his aforesaid business, and meeting his obligations therein. This was known to the defendant Easton in at least some cases. In addition to this, he made some deposits from his business to the credit of the same account, and drew checks from time to time on the account, with knowledge of which Mr. Easton must be charged. The bank in which Mr. Easton was cashier was situated across the road, and only 10 or 12 rods from Kirley's store, and from it one could see and look into the store. Mr Easton was at the bank substantially daily during all of this time, and Mr. Kirley was in possession of his store. In addition to this, it appears that Mr. Easton from time to time made purchases at the store, which necessitated his being there.

It seems to me that these facts lead irresistibly to the conclusion that at the time this mortgage was given there was an understanding and agreement between the mortgagor and mortgagee that just that should be done which was done; that it was not expected that Mr. Easton should take possession of the property covered by his chattel mortgage, or that it should be separated from the other goods in the store, or that it should be treated any differently than it had been treated, or that Kirley should manage his business in any different way than he had been managing it, but that, on the contrary, it was expected and understood that he should continue his business and his sales as before, and as he did after the mortgage was given. There cannot, of course, be the slightest question about what was actually done by Kirley in the store, and what was done after the mortgage was given does not leave any reasonable doubt in my mind about what the expectation and understanding of the parties was at the time the mortgage was given. Mr. Easton cannot be relieved from knowledge of, and from that assent, which follows from knowledge, to, what was done. He knew that most of the property covered by his chattel mortgage was a stock of goods, whose value could only

69 N.Y.S.—40

be realized by sales.    The bank account which was under his observation, as cashier of the bank, and the advances which were being made to Kirley from time to time, apprised him that the latter was continuing his business and contracting debts and making deposits from his business, and using the proceeds thereof and of the advances to continue his business.    He was where he could daily look into the store, and see that business was being conducted as usual.    In addition thereto, he was in the store himself, making purchases.    It would be absurd to assume that he believed that during 15 or 16 months no sales were made from the stock which was covered by his chattel mortgage.    All of the circumstances apprised him that Kirley must be making sales therefrom from day to day in the ordinary course of business.    He knew that none of the proceeds of those sales were being applied to the payment of the chattel mortgage, but that Kirley was using them for his own benefit.    The very fact that this chattel mortgage was never put on file is significant, as indicating the intention of the parties not to embarrass Kirley, or do anything which would prevent him from selling the property covered by the chattel mortgage.    It is not violent to infer and find, as a question of fact, from the mortgagee's continued assent, the sale of goods, and the conduct of business for his own benefit and in his own way by Kirley after the mortgage was given, and from the failure to file the chattel mortgage, that the mortgagor and mortgagee understood and agreed at the time the mortgage was given that just this course should be followed.    It would rather be unreasonable to presume and find that, with an understanding and agreement that this chattel mortgage should be put on file, and should be enforced in accordance with the provisions of law, the parties, immediately after its execution, changed their intentions, and followed the diametrically opposite course, which has been evidenced by the testimony in this case. The view which I take of the facts and the evidence in this case leads necessarily to the conclusion that the chattel mortgage was fraudulent and void, and that it cannot be enforced.    No treatment of the chattel mortgage and the property thereby covered could well be more opposed to and more obnoxious to the course which the law points out in such a case as valid and proper, than the one disclosed by the proofs in this case.    Potts v. Hart, 99 N. Y. 168, 1 N. E. 605;  Southard v. Benner, 72 N. Y. 424;  Russell v. Winne, 37 N. Y. 591, 593; Hangen v. Hachemeister, 114 N. Y. 566, 571, 21 N. E. 1046;  Gardner v. McEwen, 19 N. Y. 123, 125;  Frost v. Warren, 42 N. Y. 204, 207;  Hardin v. Dolge, 46 App. Div. 416, 421, 61 N. Y. Supp. 753.

There are some incidental questions to be taken care of by the findings and judgment in this case.

The defendant Easton soon after the death of Kirley started to foreclose his chattel mortgage, and to sell all of the property in the store, including that acquired after as well as before the execution of the mortgage.    An injunction was obtained, and an order subsequently made by Mr. Justice Andrews providing for a separation of the two kinds of property, and for a sale thereof, and for the payment of the proceeds of the after-acquired property to the administrators of Kirley, and for the payment of the proceeds of the property covered by the

chattel mortgage into court. Under that arrangement there is now in court about $3,000, as the proceeds of the latter class of property, and the findings and judgment will be adapted to that condition.

The defendant Easton incurred some expenses in the foreclosure of his mortgage and in taking care of the property, and it is insisted by the plaintiff that he should not be allowed any of these costs. Within the principles of Loos v. Wilkinson, 113 N. Y. 485, 21 N. E. 392, the defendant is undoubtedly entitled to credit for some of the expenses incurred by him. If the parties are unable to agree upon them, they may be settled either by a referee or by the court at the time the findings and judgment are settled.

There was some suggestion in behalf of the administrators that the plaintiff was indebted to the estate of Kirley on account of certain accounts which he undertook to collect, belonging to the former co-partnership, composed of plaintiff and Kirley. I am not clear, from the final course of the action, whether this claim is still insisted on or not. If it is, upon like application of the parties at the time when findings and judgment are perfected, a reference will be ordered to pass upon any questions existing in that connection. Judgment in favor of plaintiff will be with costs against the defendant Easton.

Ordered accordingly.